CHARLES MARVIN et al., Plaintiffs-Appellants, v. THE CHICAGO TRANSIT AUTHORITY, Defendant.—(The City of Chicago, Defendant-Appellee.)

First District (5th Division)   No. 81—2172

Opinion filed February 4, 1983.—Rehearing denied March 24, 1983.

William L. Barr, Jr., of Steinberg, Polacek & Goodman, of Chicago, for appellants.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and Mary K. Rochford, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE MEJDA delivered the opinion of the court:

This is an appeal from an order striking and dismissing counts V and VI of plaintiffs' first amended complaint against the defendant municipality. Charles Marvin and Rosemary Marvin sued the Chicago Transit Authority and the city of Chicago (hereinafter City) for personal injuries suffered by Charles Marvin (hereinafter plaintiff) when he was beaten by six youths at a subway platform in Chicago. At the time of the alleged beating, the subway station was patrolled by a Chicago police officer.

The issue presented for review is whether the circuit court erred in granting the City's motion to be dismissed as a party defendant pursuant to section 4—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1981, ch. 85, par. 4—102). On appeal, plaintiff contends that the City's liability is not limited by this act because: (1) the City assumed the duty of a common carrier by undertaking responsibility for policing the rapid transit system, and (2) the City owed a "special duty" to plaintiff under the specific circumstances of his injury. We affirm the order of the circuit court.

The alleged facts are as follows. On July 9, 1976, plaintiff, a Chicago Sun-Times copy cutter, left his job at 2:30 a.m. and walked alone to the subway station at Grand Avenue and State Street in the city of Chicago. At the station, he approached the cashier's window to pay his fare. Six youths had arrived and were arguing with the cashier about the validity of several transfers. These youths were loud and appeared to be intoxicated. The youths were blocking the entrance when plaintiff walked up and told the cashier that he wished to pay his fare. While plaintiff attempted to pay his fare, one youth struck him, swore at him and threatened him. Meanwhile, Harrison Mailey, a Chicago police officer, emerged from another booth and stood three to five feet away. Two of the youths jumped over the turnstile while plaintiff paid his fare. The officer told the youths to use their transfers, saying, "Just get the hell out and go on downstairs." Before

leaving, one of the youths again struck and threatened plaintiff.

The six then went to the right and down the stairs that led to the southbound platform. Plaintiff asked Officer Mailey if he would accompany him to the northbound platform. The policeman declined, telling plaintiff that he was "going to be all right" on the northbound platform because the youths had gone to the southbound one. When plaintiff walked down two flights of stairs to the landing for the northbound trains, he encountered the six youths on the northbound platform, sitting on a bench 10 feet to his right. As a result, the six again attacked and beat him, whereby he sustained severe injuries. During the beating, Office Mailey was upstairs talking to the ticket agent.

Count V of the amended complaint alleges that the City assumed a "special relationship" to passengers when it directed officers of its "Mass Transit Unit" to assume "almost full responsibility for policing the rapid transit system and protecting the riding public." It also alleges that the City breached its duty when it negligently "directed, permitted or caused" plaintiff to descend without protection into the subway, and when it improperly failed to accompany him onto the platform.

Count VI alleges that the City undertook to perform the duties of a common carrier with regard to providing passenger security, and that it breached such duties by its failure to provide plaintiff with adequate police protection, by its failure to warn him of the possible dangers, and by its failure to provide for his safety under the unique circumstances of the case.

The defendant City moved to strike the complaint and dismiss the case as to its liability on the basis of section 4—102 of the Local Governmental and Governmental Employees Tort Immunity Act. Plaintiff then filed a transcript of his own deposition testimony and a memorandum in opposition to the motion. The circuit court ordered that the City be dismissed as a party defendant and that the cause of action continue as to defendant Chicago Transit Authority.

OPINION

It is well settled in Illinois that generally a municipality is not liable for its failure to supply police protection. (*Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214; *Adamczyk v. Zambelli* (1960), 25 Ill. App. 2d 121, 166 N.E.2d 93.) This common law concept of sovereign immunity is expressed in section 4—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1981, ch. 85, par. 4—102) which provides: "Neither a local public

entity nor a public employee is liable \*\*\* for failure to provide adequate police protection or service, failure to prevent the commission of crimes and failure to apprehend criminals." It is also well settled that the duty of the police is to preserve the well-being of the community at large, and that such duty is generally not owed to specific individuals. (*Huey; Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400, 440 N.E.2d 942; *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 410 N.E.2d 610.) This rule rests upon public policy considerations and "embodies the conclusion that a police department's negligence—its oversights, blunders, omissions—is not the proximate or legal cause of harms committed by others." *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 445, 410 N.E.2d 610, 612.

To survive a motion to dismiss, it is not sufficient that a complaint merely allege a duty, but the pleader must allege facts from which the law will raise a duty, and facts must be alleged showing an omission of that duty and resulting injury. (*Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 414 N.E.2d 104.) Thus, we must look to the instant complaint to determine if plaintiff has alleged sufficient facts from which the law will raise a duty and which will therefore support the cause of action in view of the tort immunity statute.

In count V of plaintiff's first amended complaint, plaintiff alleges that the City assumed a "special relationship" to passengers of the rapid transit system by assuming "almost full" responsibility to police its facilities. It is further alleged that the City breached its duty to exercise ordinary care toward plaintiff when it negligently "directed, permitted or caused" plaintiff to descend into the subway without protection, and by its failure to accompany him when it knew or should have known of the danger of injury to him. On appeal, plaintiff contends that this count states a cause of action under the "special duty" exception to the general rule that municipalities are not liable for failure to exercise general police powers.

■■ ■ The general requirements of the "special duty" exception, whereby the police owe a special duty to an individual, as contrasted to the public at large, are as follows: (1) the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either affirmative or wilful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality. (*Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400, 407, 440 N.E.2d 942, 947; *Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 970, 414 N.E.2d 104, 106.)

Here, even assuming plaintiffs have satisfied the first three requirements, they have made no allegations which lead to the conclusion that the plaintiff's injuries occurred while he was under the direct and immediate control of a police officer of the City. The mere disjunctive allegation that the police officer "directed, permitted, or caused" plaintiff to descend to the platform in question does not meet this latter requirement. It is also noted, parenthetically, that any favorable inference from such pleading is betrayed further by plaintiff's own deposition testimony which clearly demonstrates the absence of such direct and immediate control of him by the police at the time of his unfortunate injury. Accordingly, we must uphold the dismissal of the allegations of count V which assert the City's negligence based upon the "special duty" exception. Accord, *Curtis,* but *c.f. Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147, *appeal after remand* (1970), 128 Ill. App. 2d 157, 262 N.E.2d 829, *cert. denied* (1971), 403 U.S. 919, 29 L. Ed. 2d 696, 91 S. Ct. 2230, which found a cause of action where the plaintiff was attacked again when he accompanied police officers to identify some persons who had attacked him earlier in the day.

With regard to count VI of plaintiff's first amended complaint, plaintiff argues that the tort immunity provision is not applicable to the City due to the City's affirmative undertaking of the protection of fare-paying passengers of the rapid transit system located within its boundaries. It is plaintiff's contention that the City thereby has assumed a significant aspect of the common law duties of a common carrier. Plaintiff theorizes that the City, by assuming the role of policing the rapid transit stations, became subject to the Metropolitan Transit Authority Act (Ill. Rev. Stat. 1981, ch. 111⅔, par. 301 *et seq.*) and thereby is not entitled to immunity under the provision of the Local Governmental and Governmental Employees Tort Immunity Act, which states:

"*** [T]his Act does not apply to any entity organized under or subject to the 'Metropolitan Transit Authority Act' ***." (Ill. Rev. Stat. 1981, ch. 85, par. 2—101(b).)

Finally, plaintiff concludes that the City, through its police officers, was bound to exercise a high degree of care toward him, a passenger of the transit system.

▮▮ A motion to strike and dismiss admits facts well pleaded, but not conclusions or opinions alleged in the pleadings, such as unsupported conclusions of law, and the motion does not admit any situation which is legally or factually impossible. (*E.g., Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 275 N.E.2d 429; *Palier v. Dreis &*

*Krump Manufacturing Co.* (1967), 81 Ill. App. 2d 1, 225 N.E.2d 67.) As defined by Illinois courts, a "common carrier" is "*one who undertakes for the public to transport from place to place such persons* \*\*\* as choose to employ him for hire." (*Illinois Highway Transportation Co. v. Hantel* (1944), 323 Ill. App. 364, 374, 55 N.E.2d 710, 714.) Plaintiff here has alleged insufficient facts to support the conclusion that the City has undertaken the operation of a common carrier under this definition. Regarding the applicability of the Metropolitan Transit Authority Act, we observe that this act creates the Chicago Transit Authority and it invests no powers and creates no duties or liabilities upon the City of Chicago or its police department. We therefore find nothing in this act which would expand the traditional common law duty of police departments and their officers owed to the public at large. Accordingly, we find this act inapplicable to the existence of any duty owed by the City in the situation at bar.

Next, plaintiff relies upon the general tort principle that liability can arise from the negligent performance of a voluntary undertaking for the protection of third persons. (See generally *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472; *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596; *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769; Restatement (Second) of Torts sec. 324A (1966).) While these authorities have held that a duty voluntarily assumed must be performed with "due care" or " '\*\*\* such competence and skill as one possesses' " (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 85-86, 199 N.E.2d 769, 774), or with reasonable care (*Cross; Pippin*), there is no requirement that such duty must encompass a high degree of care as alleged by plaintiff's complaint.

■ The existence of a duty ultimately depends upon choice between competing policies. (Prosser, Torts sec. 53 (4th ed. 1971).) Recognizing a duty of the highest degree of care owned generally by police officers to passengers of the Chicago Transit Authority, as urged by plaintiff, would place the police department in the position of virtual insurers of the personal safety of every passenger, certainly an untenable result. As previously stated, the duty of the police is to preserve the well-being of the community at large, and no recovery is permitted for breach of this duty unless the police have assumed a special relationship to a particular person. The plaintiff's allegations in count VI are insufficient to take this case out of the general rule denying liability. We therefore agree with the trial court's dismissal of this count for failure to state a cause of action against the city of Chicago.

Finally, plaintiff argues that the "dual capacity doctrine" of work-

ers' compensation law creates an alternate basis for the imposition of liability upon the City. The doctrine permits recovery by an employee from an employer if the injuries resulted from a breach of a duty of an employer independent from those imposed upon him as an employer. (See generally *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 396 N.E.2d 524; *Goetz v. Avildsen Tool & Machines, Inc.* (1980), 82 Ill. App. 3d 1054, 403 N.E.2d 555.) This doctrine has no relevance to the case at bar, and we need not discuss its validity under the circumstances herein.

In reviewing the instant dismissal order, we have considered only matters relating to the sufficiency of the complaint. We hold that counts V and VI of the instant amended complaint, standing alone and unaided, fail to demonstrate any possibility of recovery against the city of Chicago.

For the foregoing reasons, the order of the circuit court is affirmed.

Affirmed.

WILSON, P.J., and SULLIVAN, J., concur.