BARBARA FESSLER, Deceased, by her Representative and Father, Kenneth Fessler, Plaintiff-Appellant, v. R.E.J. INC., d/b/a J.E.M. Bar *et al.*, Defendants (The City of Jerseyville *et al.*, Defendants-Appellees).—GEORGE SMITH *et al.*, Adm'rs of the Estate of Stanton A. Smith, Deceased, Plaintiffs-Appellants, v. DONALD TILLERY *et al.*, Defendants (The City of Jerseyville *et al.*, Defendants-Appellees).

Fourth District   Nos. 4—86—0883, 4—86—0919 cons.

Opinion filed September 24, 1987.

Joseph R. Brown, Jr., of Lucco and Brown, of Edwardsville, for appellant Barbara Fessler.

William Strang, of Jerseyville, for appellants George Smith and Herta Smith.

William E. Miller III, of Coppinger, Carter, Schrempf & Blaine, of Alton, for appellee City of Jerseyville.

Williamson, Webster, Groshong, Moorman & Falb, of Alton, for appellee Sgt. Ralph Pickett.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiffs in this consolidated appeal brought separate actions on behalf of the decedents, Barbara Fessler and Stanton Smith. Several defendants were named in each action, including the city of Jerseyville (city) and one of its police officers, Sergeant Ralph Pickett.

Plaintiffs alleged local law enforcement agencies on July 7, 1984, received several citizen complaints concerning erratic driving behavior exhibited by a pickup truck on Illinois Route 267 leading to Jerseyville. In response, the city dispatched Sergeant Pickett, who encoun-

tered the truck and its two occupants in a parking lot in town. According to the complaints, although Sergeant Pickett knew or should have known both men were intoxicated, he allowed them to remain with their parked vehicle. Just over one hour later that same pickup, being operated by Donald Tillery without a valid driver's license, collided with a vehicle driven by Smith with Fessler as a passenger. Both Smith and Fessler died as a result of injuries sustained in the accident.

The city and Sergeant Pickett moved to dismiss for failure to state a cause of action those counts of the plaintiffs' complaints relating to them. Pickett's motion also raised the immunity afforded under sections 2—205 and 4—107 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, pars. 2—205, 4—107). The trial court granted both motions. Plaintiffs now appeal pursuant to Supreme Court Rule 304(a). 107 Ill. 2d R. 304(a).

At issue here is whether under the facts as alleged the decedents were owed a particular duty of care by the defendants. While the circumstances of this matter are tragic, we hold under the decisional law of this State no such duty exists, and we affirm.

Counts V through VIII of the complaint filed by plaintiffs George and Herta Smith, as administrators of the estate of Stanton Smith, sounded in tort against the city and Sergeant Pickett. Similarly, counts IX through XII of the complaint, maintained by Kenneth Fessler as representative and father of Barbara Fessler, charged the city and Sergeant Pickett with negligence as well as wilful and wanton misconduct. The factual allegations contained therein identify the fatal accident as occurring July 7, 1984, on Illinois Route 267 approximately 4.8 miles north of the Jersey and Greene county lines. Smith was operating his car in a southbound direction, while Tillery was travelling northbound. At about 9:31 p.m., the truck driven by Tillery crossed over the centerline into the southbound lane, striking the Smith vehicle.

Earlier in the evening, at about 8:14 p.m., Sergeant Ralph Pickett was dispatched to investigate a red pickup truck based on several complaints received from motorists that the vehicle was being driven in a reckless and dangerous manner. He located the red pickup parked in a lot on West Spruce Street in Jerseyville. There he spoke with Donald Tillery, who the complaints assert was both intoxicated and under the influence of a controlled substance at the time. Tillery also did not possess a valid driver's license, his driving privileges having been suspended upon a twelfth traffic offense conviction. After a

brief investigation during which Sergeant Pickett checked only the license belonging to Tillery's companion, Mark Todd, both men were allowed to remain with their vehicle.

Variously stated in terms of both ordinary negligence and wilful and wanton misconduct, both complaints essentially alleged the following acts or omissions by the city and Sergeant Pickett: (1) failure to restrain Donald Tillery at a time when Pickett in the exercise of reasonable police practice knew or should have known Tillery was intoxicated; (2) failure to require Tillery to perform a field sobriety test, breathalyzer test, or submit to a blood test; (3) failure to check Tillery's driving status, which would have revealed a suspended driver's license; (4) failure to investigate the activities of Tillery and Mark Todd even after several drivers had called the Jerseyville police department requesting aid in removing their vehicle from the highway; (5) allowing Tillery and Todd to remain in control of their automobile when the defendants knew or should have known both men were intoxicated and could not lawfully operate that vehicle; (6) having knowledge that several persons had observed reckless and drunken driving exhibited by the vehicle, failed to take any action to discern their ability to drive or observe their actions in operating a vehicle; (7) failure to warn other police jurisdictions of the dangerous condition created by Tillery and Todd; (8) failure to either remove Tillery and Todd to an alcohol detoxification center or to arrest them; (9) failure to follow "established police procedure" in investigating the circumstances and condition of both Tillery and Todd; and (10) failure to restrain Tillery and Todd from operating the vehicle "in spite of having caused the protection and rescue efforts by others, including *** other motorists and the Jersey County Sheriff's department to be abandoned." In this vein, plaintiffs averred defendants knew or should have known Tillery and Todd presented a "serious and life threatening danger to a class of foreseeably injured persons—the motoring public on Highway 267 and surrounding roads in Greene and Jersey Counties on July 7, 1984." Additionally, both complaints charged the city alone with a failure to adequately train its police personnel or otherwise provide appropriate procedural regulations for the investigation, detention and apprehension of intoxicated drivers.

The fatal accident occurred at approximately 9:30 p.m. on the highway leading north from Jerseyville to the town of Roodhouse, where both Tillery and Todd resided. A subsequent blood test showed Tillery's blood-alcohol level to be .17, or over the legal limit. That test also revealed an ethchlorvynol level of 4.23 milligrams per 100 deciliters in Tillery's blood. No alcohol or drugs were detected in a post-

mortem blood test taken from Stanton Smith.

In dismissing the action, the trial court relied upon a series of decisions which have held that, absent a special relationship between law enforcement officials and an injured victim, police owe a duty generally to the public only and not to specific individuals. Plaintiffs here ask that we either reexamine the so-called "public duty" doctrine or abolish it altogether.

■■■ Few things are more basic to tort law than that in order to recover for the negligent conduct of another, a plaintiff must establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injuries or damages proximately resulting from that breach. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 18, 440 N.E.2d 96, 98.) The existence of negligence in a particular case is often a mixed bag of law and fact. Questions of whether a duty has been breached and whether the breach proximately caused injury are factual matters for a jury. (*First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 12, 373 N.E.2d 1326, 1331.) The existence of a duty, however, is a determination which must be made by the court as a matter of law. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617, 619.) In the absence of factual allegations from which the law will give rise to a duty, or without facts well-pleaded sufficient to show an omission of that duty and a resultant injury, a complaint will fail to state a cause of action. *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 176, 446 N.E.2d 1183, 1186.

■■ ■ Independent of statutory or common law concepts of sovereign immunity, the general rule is that municipalities are not liable for a failure to supply general police or fire protection. (*Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 363, 243 N.E.2d 214, 216.) The duty of police to preserve a community's well-being and to prevent the commission of crimes is owed to the public at large, not to specific individuals. (*Santy v. Bresee* (1984), 129 Ill. App. 3d 658, 473 N.E.2d 69.) This general "public duty" rule rests upon solid police considerations and "embodies the conclusion that a police department's negligence— its oversights, blunders, omissions—is not the proximate or legal cause of harms committed by others." *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 445, 410 N.E.2d 610, 612.

■■ Still, the "public duty" rule or doctrine contains one significant exception: the rule does not apply where the police have assumed a special relationship or are under a special duty to an individual which elevates his status beyond that of a member of the general public. (*Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 363, 243 N.E.2d 214, 215-16; *Mallder v. Rasmussen* (1986), 145 Ill. App. 3d 809, 811,

495 N.E.2d 1356, 1357-58.) Four elements comprise this "special duty" exception; they were first specifically enumerated by the appellate court in *Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 970, 414 N.E.2d 104, 106:

> "(1) [T]he municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed [citation]; (2) there must be allegations of specific acts or omissions on the part of the municipality [citation]; (3) the specific acts or omissions on the part of the municipal employees must be either affirmative or wilful in nature [citation]; and (4) the injury must occur while the *plaintiff is under the direct and immediate control* of employees or agents of the municipality [citation]." (Emphasis added.)

See also *Seibring v. Parcell's, Inc.* (1987), 159 Ill. App. 3d 676, 512 N.E.2d 394; *Marshall v. Ellison* (1985), 132 Ill. App. 3d 732, 736-37, 477 N.E.2d 830, 834; *Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400, 407, 440 N.E.2d 942, 947, *aff'd in part & rev'd in part* (1983), 98 Ill. 2d 158, 456 N.E.2d 116.

All four elements must be alleged for an individual to fall within the exception. The "special duty" exception itself recognizes that on occasion certain persons will come within the immediate care and custody of law enforcement officials. (See *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147 (valid cause of action found where plaintiff was attacked after he accompanied police officers to identify his assailant from an earlier attack).) Once circumstances arise where it becomes the duty of public officials to act on behalf of specific individuals, the failure to carry out that duty in a nonnegligent manner may be actionable. *Fryman v. JMK/Skewer, Inc.* (1985), 137 Ill. App. 3d 611, 616-17, 484 N.E.2d 909, 912.

■ As has been the case in several other appellate decisions, assuming the plaintiffs here have alleged facts sufficient to establish the first three requirements of the exception, we do not view any allegations in either complaint to show plaintiffs' decedents were injured while under the direct and immediate control of Sergeant Pickett and the city of Jerseyville. Accordingly, we uphold the dismissal of counts IV through VIII of the Smith complaint and counts IX through XII of the amended Fessler complaint.

■ Plaintiffs advance several rationales seeking to restrict or abolish the aforementioned public duty-private duty dichotomy. They first urge that the fourth requirement of the exception—direct and immediate control—be either expanded or abandoned "because it oversimplifies the serious question of duty." As support they point to

the decision in *Bell,* which first recited the four requirements for the exception. In setting forth the final element of direct and immediate control, the court in *Bell* specifically cited as authority *Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 364 N.E.2d 423. (*Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 970, 414 N.E.2d 104, 106.) Plaintiffs maintain that the *Bell* court's reliance on *Brooks* for the control element was erroneous, asking that we reexamine the basis for requiring this fourth prong.

The *Brooks* court upheld a jury verdict in favor of the plaintiffs on their wrongful death action. The court rested its decision upon the existence of an affirmative duty to warn, which it found to arise once a special relationship was created between the parties so as to impose a legal obligation of due care for the benefit of another. Under the facts in *Brooks,* the decedent drove up to a roadblock scene, and two police officers initiated control over him by directing him to park his car on the shoulder of the road. They therefore assumed a duty to him, and a special relationship arose. Having initiated some control over the decedent, the officers' affirmative duty under these circumstances evolved into a further duty to warn him of a dangerous or unsafe condition known by police officers which was not apparent to the decedent. (*Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 6-7, 364 N.E.2d 423, 427-28.) At no time did the officers inform the decedent of the purpose of the roadblock. The officers' failure to place decedent in a "safe" position within the roadblock area, taken together with their failure to warn him of a known danger of which the decedent had no notice, therefore constituted a breach of that duty, the *Brooks* court held. While perhaps there are better examples in the law of a specific individual plaintiff being placed under the direct and immediate control of police, as where a witness is taken by officers to identify someone accused of a crime (see *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 417), we see nothing wrong with the *Bell* court's reliance upon *Brooks* for the fourth requirement.

Moreover, as plaintiffs are quite aware, numerous appellate decisions have embraced all four requirements with regularity. (See, *e.g., Hernandez v. Village of Cicero* (1986), 151 Ill. App. 3d 170, 502 N.E.2d 1226; *Tannenbaum v. Lincoln National Bank* (1986), 143 Ill. App. 3d 572, 493 N.E.2d 143; *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 475 N.E.2d 960.) Our supreme court has also implicitly approved of the special duty exception. *Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400, 440 N.E.2d 942, *aff'd in part & rev'd in part* (1983), 98 Ill. 2d 158, 165, 456 N.E.2d 116, 120 (su-

preme court stated the appellate court's treatment of the "special duty" issue was "both adequate and correct").

Further, the same arguments maintained by the plaintiffs here— that the control requirement should be expanded or abolished because it oversimplifies the question of duty—were likewise raised and rejected in *Luber v. City of Highland* (1986), 151 Ill. App. 3d 758, 502 N.E.2d 1243. That case also involved police contact with an allegedly intoxicated motorist who a short time later was involved in a car accident. The *Luber* court, in holding plaintiff's complaint was properly dismissed for failure to state a cause of action, reaffirmed all four prongs of the test to determine the existence of a special duty. In responding to that plaintiff's same argument concerning expansion or abolition of the fourth requirement, the court declined to find the existence of a special duty under the allegations of that complaint. Similarly, we refrain from expanding or abrogating the control requirement.

■ Next, plaintiffs ask that we accept the rationale of the Massachusetts Supreme Court in *Irwin v. Town of Ware* (1984), 392 Mass. 745, 467 N.E.2d 1292, which found a duty owed to individual members of the public based upon foreseeability. This court in *Marshall v. Ellison* (1985), 132 Ill. App. 3d 732, 477 N.E.2d 830, declined the invitation to adopt the *Irwin* foreseeability test. We see no justification for concluding otherwise now.

■ Plaintiffs nevertheless maintain the decedents were not merely members of the general public. They have alleged the decedents were representative members of a specific, foreseeable class comprised of persons who could reasonably be expected to be injured when Sergeant Pickett failed to take Tillery and Todd into custody: namely, the class of drivers expected to utilize Route 267 between Jerseyville and Roodhouse the evening of July 7, 1984. We shall not, however, broaden the concept of a special duty to individuals that far, particularly as it would be based upon concepts of foreseeability.

Plaintiffs also advocate expansion of the special duty owed to third persons premised upon section 324A of the Restatement of Torts (Restatement (Second) of Torts sec. 324A (1965)), which states:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise a reasonable care to protect his undertaking, if

(a) his *failure to exercise reasonable care increases the risk*

*of such harm,* or
\*\*\*

(c) the *harm is suffered because of reliance of the other* or the third person *upon the undertaking.*" (Emphasis added.) Restatement (Second) of Torts sec. 324A (1965).

In *Fudge v. City of Kansas City* (1986), 239 Kan. 369, 720 P.2d 1093, the Kansas Supreme Court recently cited section 324A(a) as controlling when it expanded the special duty owed to a person killed in a head-on collision with a drunk driver. Kansas City police officers had earlier failed to take the intoxicated motorist into protective custody. The Kansas court determined that where police are subject to mandatory internal guidelines which set forth procedures to be followed in holding persons suspected to be incapacitated by drugs or alcohol, *or* where a special duty is owed to a specific individual, the general "public duty" rule does not apply. As Kansas City police officers were subject to such internal guidelines, the court found a concomitant duty under section 324A(a) owed to the decedent where a failure to take a drunk driver into custody significantly increased the risk of harm to others. Accordingly, the city was held liable for that failure. 239 Kan. 369, 373-74, 720 P.2d 1093, 1099.

In *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596, our supreme court held a complaint filed on behalf of a public housing authority tenant had satisfactorily pleaded the reliance requirement of section 324A(c) so as to give rise to a duty owed to him even where no such duty would otherwise exist. In that case, the court first noted the defendant housing authority as landlord owed no independent duty to protect its tenants from criminal acts on the premises. However, when the authority voluntarily entered into a contract with a security service by which the latter agreed to provide guard protection on the premises, the court held liability could arise from the negligent performance of such a voluntary undertaking. Any duty on behalf of a defendant was limited to the extent of each defendant's particular undertaking. Thus, the landlord could be liable at most for negligent hiring of the security service. The service itself could be separately liable under section 324A(c) due to the landlord's reliance on its voluntarily contracted-for services, a reliance the court found created a duty owing from the security service to the plaintiff's decedent. Accord *Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 431 N.E.2d 1038.

Plaintiffs here allege Sergeant Pickett's negligent failure to at least take Todd and Tillery into protective custody appreciably increased the risk of physical harm to others, including the decedents,

under section 324A(a). They also contend under subsection (c) that "others" had refrained from acting in reliance upon Sergeant Pickett when he undertook to investigate the pickup accused of reckless driving.

Under this scenario, plaintiffs on appeal point to the transcript of Donald Tillery's criminal trial, which has merely been attached to the record. While the factual testimony appearing in the trial transcript is not specifically alleged in either complaint, we elect to take notice of it for the limited purpose of giving full consideration to the plaintiffs' arguments in this regard. In so doing we in no way mean to infer the transcript is properly before us.

Testimony at that trial revealed several motorists observed a red pickup travelling at high speeds weaving back and forth on the road as it approached Jerseyville along Route 267 earlier in the evening of July 7, 1984. The truck was apparently being operated by Mark Todd at the time. Both the Jerseyville police department and the Jersey County sheriff received citizen complaints concerning the truck's behavior. One individual who had seen the truck's reckless driving pattern on the way into town went directly to the Jerseyville police station. Two other persons testified they followed the truck into Jerseyville, and were prepared to do "whatever had to be done" to insure that the truck remained off the highway. When these persons saw Sergeant Pickett pull up to the parked truck, though, they abandoned their endeavor. They did file a report with the Jersey County sheriff's office, which informed them a city officer was handling the situation.

Plaintiffs thus postulate under section 324A(c) both the individual citizens and the Jersey County sheriff were frustrated in their efforts to remove the truck from the road due to reliance on the Jerseyville police department's bungled attempt to handle the matter. Instead, plaintiffs assert, the truck and its occupants were allowed to continue on the road, resulting in harm to the decedents.

We are reticent to so extend the duty of police officers in Illinois based upon the negligent performance of a so-called "voluntary" undertaking for the protection of third persons. First, imposition of such a duty upon police for the benefit of third parties under section 324A has already been viewed with disfavor. (See *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 178, 446 N.E.2d 1183, 1188.) Second, liability arose in *Pippin* when a landlord voluntarily took affirmative steps beyond what was normally required of it for the protection of its tenants, and where there was reliance upon another who may have negligently performed that voluntary undertak-

ing. We have difficulty viewing as "voluntary" the actions of a police officer in responding to an official dispatch during the ordinary course of his duties.

Third, in *Fudge* the Kansas court first held the existence of mandatory internal police rules removed all discretion from the officer's contact with possibly intoxicated drivers, thereby creating a special duty to act accordingly. That special duty, the court reasoned, translated into an affirmative obligation to the decedent. We will not engage in the same leap in reasoning indulged in by the *Fudge* court, however. The Kansas court relied upon internal police guidelines to take the matter out of the general "public duty" rule. We note no such applicable internal guidelines for the benefit of Jerseyville police officers in the case at bar.

■■■ Plaintiffs do argue they have alleged in their complaints the existence of such guidelines and, for the purposes of a motion to dismiss, such allegations must be treated as true. Defendants respond there are no such internal rules. As a general principle upon a motion to dismiss, all facts properly pleaded in the complaint, as well as those made a part of the complaint by exhibit, are to be taken as true in ruling on the motion. (*Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, 148, 503 N.E.2d 246, 247.) No applicable exhibits are appended to the plaintiffs' complaints. What is more, the allegations contained therein are contradictory. Plaintiffs at one point allege a failure by the city to provide regulations its officers could follow in the investigation and apprehension of intoxicated drivers. At another point, plaintiffs merely charge the defendants with failure to follow established police procedures. We view such discordant allegations as inadequate to establish the actual existence of internal guidelines for purposes of a motion to dismiss, especially as it would relate to the expanded duty set forth in *Fudge*.

■■■ Plaintiffs finally implore this court to abolish the "public duty" doctrine outright based upon considerations of public policy and in recognition that other States have so acted. They acknowledge that the existence of a duty ultimately depends upon choices between competing policies (*Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 410 N.E.2d 610, 612), and assert the societal need to control drunken driving allows for finding a "duty owed to the innocent."

This court recently had occasion to state:

> "[I]t should be remembered that efficient law enforcement necessarily involves a grant of broad discretion to police officers in determining whether to restrain, detain, or arrest an individual. This discretion is required by the facts that there are often

numerous matters deserving of a police officer's attention at the same time, and it is often impractical for police officers to consult with their superiors in order to arrange their priorities. Moreover, a holding that a police officer has no discretion as to whether to restrain or detain an individual *** would often place police officers in a difficult position: if they would not detain or take an apparently intoxicated individual into custody, they could be subject to a tort suit; if they would detain or take such an individual into custody, they might be subject to a Federal civil rights suit premised on alleged unlawful detention. Police officers should not be placed in this dilemma." *Seibring v. Parcell's, Inc.* (1987), 159 Ill. App. 3d 676, 680, 512 N.E.2d 394, 397.

The law and policy of this State call for the continued validity of the public duty rule and its four-pronged exception. Accordingly, the judgment of the circuit court of Jersey County is affirmed.

Affirmed.

SPITZ, P.J., and GREEN, J., concur.