VALIANT R.W. POLINY, Plaintiff-Appellant, v. MARIA SOTO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 87—1322

Opinion filed September 23, 1988.

204

Robert H. Dachis, of Chicago (Ronald J. Ehemann, of counsel), for appellant.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Joanne Simboli Hodge, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff Valiant R.W. Poliny appeals from an order of the circuit court of Cook County dismissing one of three counts of his complaint for failure to state a cause of action against defendants City of Chicago and two of its police officers, Maria Soto and James Stein, charging them with negligence in leaving him at an arrest scene where he was subsequently attacked by a friend of the arrestee. On appeal, plaintiff argues that the judicially created "special duty" exception to the tort immunity of police officers is "improperly formulated" and against public policy and section 9—103 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, par. 9—103) is unconstitutional. For the reasons set forth below, we affirm.

Plaintiff's complaint alleges that on July 20, 1985, he and Donald Nagolski were walking on Sheffield Avenue near Clark Street in Chicago when they were attacked and beaten by Rolando Calderon. Nagolski was assisted by witnesses at the scene and taken to a hospital. Plaintiff followed Calderon up Clark Street for several blocks and subsequently flagged a police car manned by defendants Soto and Stein. Plaintiff led the officers to where Calderon was standing with some friends, one of whom was Jose Rosario. After the officers arrested Calderon, and in their presence, Rosario and another unnamed person verbally abused and threatened plaintiff for having caused Calderon's arrest. Plaintiff then requested that the officers "assist him back to the stationhouse [located approximately two blocks away] to file his complaint and that they not leave him alone with Rosario and the other individual." The officers discussed, but subsequently refused, plaintiff's request and left the scene. Shortly thereafter, plaintiff was attacked and battered by Rosario.

In July 1986, plaintiff and Nagolski filed a three-count complaint against the City of Chicago, Officers Soto and Stein, Calderon, and Rosario. Count I consists of a claim by both plaintiff and Nagolski

against Calderon, count II is a claim by plaintiff against Rosario, and count III is a claim by plaintiff against the City and Officers Soto and Stein. The City subsequently filed a motion to dismiss count III and, on April 27, 1987, the court granted the motion based on its finding that plaintiff failed to state a cause of action. This appeal followed.

■■ To sufficiently state a cause of action based on negligence, the plaintiff must establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach. (*Eddings v. Dundee Township Highway Commissioner* (1985), 135 Ill. App. 3d 190, 478 N.E.2d 888.) The existence of a duty is a question of law properly addressed by the court. (*Horrell v. City of Chicago* (1986), 145 Ill. App. 3d 428, 495 N.E.2d 1259.) Absent a legal duty, there can be no recovery in negligence as a matter of law. *Keller v. Mols* (1984), 129 Ill. App. 3d 208, 472 N.E.2d 161.

■ ■ Pursuant to section 4—102 of the Tort Immunity Act, "[n]either a local public entity nor a public employee is liable *** for failure to provide adequate police protection or service, failure to prevent the commission of crimes and failure to apprehend criminals." (Ill. Rev. Stat. 1985, ch. 85, par. 4—102.) "The duty of police to preserve a community's well-being and to prevent the commission of crimes is owed to the public at large, not to specific individuals." (*Fessler v. R.E.J. Inc.* (1987), 161 Ill. App. 3d 290, 295, 514 N.E.2d 515, *appeal denied* (1988), 118 Ill. 2d 542.) This "public duty" rule "embodies the conclusion that a police department's negligence—its oversights, blunders, omissions—is not the proximate or legal cause of harms committed by others." (*Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 445, 410 N.E.2d 610.) A narrow exception to this rule arises, however, where a special relationship exists between the police and an individual, thereby creating a "special duty" owed by the police to the individual. (See, *e.g.*, *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 380, 219 N.E.2d 147, *after remand* (1970), 128 Ill. App. 2d 157, 262 N.E.2d 829 (police officers owed a duty to the plaintiff, who "was called into a position of peril by the police" when he accompanied them to identify his assailants from an earlier attack and was attacked again by suspects under the control of the police).) In determining whether a special duty is owed, the following requirements must be met: "(1) the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either affirmative or wilful in nature; and (4) *the injury must occur while the plain-*

*tiff is under the direct and immediate control of employees or agents of the municipality."* (Emphasis added.) *Marshall v. Ellison* (1985), 132 Ill. App. 3d 732, 737, 477 N.E.2d 830.

In the instant case, plaintiff concedes that he is unable to satisfy the fourth requirement of the special duty exception, *i.e.*, he was not in the immediate control of the police when he was attacked by Rosario. He argues, however, that the control requirement should be eliminated as an element of the special duty exception and, alternatively, that the special duty exception should be expanded to include individuals who are material witnesses, as well as individuals who "assist" the police in making an arrest of a wrongdoer and who may be "foreseeably" injured by bystanders at the scene after the police have departed. In support thereof, he first asserts that the "control" requirement, which was originally articulated in *Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 414 N.E.2d 104, is "based on a sandy foundation" and is therefore an erroneously formulated requirement under the special duty exception. Specifically, plaintiff argues that *Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 364 N.E.2d 423, the case cited to in *Bell* in support of the control requirement, is "inapposite to the rule for which it is cited."

■ We first observe that our supreme court has not taken exception to application of the fourth requirement as an element of stating a cause of action in negligence against police officers under the special duty exception to their tort immunity under the Act. (See *Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400, 440 N.E.2d 942, *aff'd in part and rev'd in part* (1983), 98 Ill. 2d 158, 456 N.E.2d 116 (the appellate court's treatment of the special duty issue was deemed "adequate and correct" by our supreme court).) Consideration of this element also has been embraced with regularity in our appellate decisions. See, *e.g.*, *Kavanaugh v. Midwest Club, Inc.* (1987), 164 Ill. App. 3d 213, 517 N.E.2d 656; *Hernandez v. Village of Cicero* (1986), 151 Ill. App. 3d 170, 502 N.E.2d 1226; *Luber v. City of Highland* (1986), 151 Ill. App. 3d 758, 502 N.E.2d 1243; *Tannenbaum v. Lincoln National Bank* (1986), 143 Ill. App. 3d 572, 493 N.E.2d 143; *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 475 N.E.2d 960; *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 446 N.E.2d 1183.

■ In addition, plaintiff's specific argument that the control element is based on a "sandy foundation," *i.e.*, *Bell*'s citation to *Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 364 N.E.2d 423, in support thereof, was rejected in *Fessler v. R.E.J. Inc.* (1987), 161 Ill. App. 3d 290, 514 N.E.2d 515, *appeal denied* (1988), 118 Ill. 2d 542. In *Brooks*,

the decedent drove up to a roadblock scene, two police officers initiated control over him by directing him to park his car on the shoulder of the road, they did not warn him of the reason for the roadblock, and he was subsequently killed when Lundeen's car smashed into his parked car. On appeal, this court upheld the jury's verdict in favor of the plaintiffs on their wrongful death action, resting its decision upon the existence of an affirmative duty to warn which it found to arise once a special relationship was created between decedent and the police upon the action of the police in directing decedent to park his car on the shoulder of the road.

Based on the foregoing, plaintiff argues that since the question of whether the officers *"had to have been present* at the accident in order for Plaintiffs to prevail was not an issue" in *Brooks, Brooks* is insufficient authority to support the *Bell* control requirement. Clearly, plaintiff's argument is without merit. The *Brooks* court's holding in fact was based on the special relationship created by the presence of the police and their initial control of decedent in directing him to park his car on the shoulder of the roadway. Accordingly, we agree with the *Fessler* court that *Brooks* sufficiently supports the control requirement articulated in *Bell.*

We also reject plaintiff's contention that the police owed him a special duty based on his status as a "material witness." Plaintiff relies on *Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147, *after remand* (1970), 128 Ill. App. 2d 157, 262 N.E.2d 829, and *Schuster v. City of New York* (1958), 5 N.Y.2d 75, 154 N.E.2d 534, 180 N.Y.S.2d 265, cited by the *Gardner* court, in support of this argument. In *Gardner,* the court found that the police owed the plaintiff a duty where the plaintiff "was called into a position of peril" by the police when he agreed to accompany them to identify the assailants who had beaten him earlier and was attacked by the suspects who were under the control of the police. In *Schuster,* the plaintiff supplied information to the police at their request through public notices to private citizens to report the whereabouts of a well-known criminal, the plaintiff's part in the criminal's capture was widely publicized, he received threats as a result thereof and notified the police but did not receive any protection from them, and he was subsequently killed three weeks later. The *Schuster* court held that where a municipality uses a private person in making an arrest, it owes a duty to that person to furnish protection to him. In the instant case, however, plaintiff was not called into a position of peril by Officers Soto and Stein to make an arrest, nor was he "used" by the police in order to arrest Calderon; plaintiff acted voluntarily to effect

Calderon's arrest as a result of the beating he and Nagolski suffered at the hands of Calderon.

■ Plaintiff next argues that public policy reasons require modification of the special duty exception to take into account the circumstances involved here. Specifically, he relies on sections 302B and 448 of the Restatement of Torts (Restatement (Second) of Torts §§302B, 448 (1986)) for the proposition that law enforcement officers should be treated like every other member of society, *i.e.*, if their negligent acts or omissions expose an individual to an unreasonable risk of harm which was foreseeable, their negligence should be actionable notwithstanding whether or not an individual is in their immediate control when he is injured. In other words, plaintiff appears to argue that injury to witnesses at the scene of a crime by other bystanders is foreseeable and, accordingly, the failure of the police to protect such witnesses rises to the level of actionable negligence. Plaintiff further contends that "[a]s the rule is now formulated, the public has every reason 'not to get involved' for fear of reprisal from the accused (or his friends) as the police drive safely off, negligently, perhaps, but not responsible."

As stated in *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307, while foreseeability is generally accepted as the test to be applied by a jury in determining if a duty has been violated, *in defining the scope of the duty*, other elements must be considered by the court. In *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 526, 513 N.E.2d 387, our supreme court articulated the "other elements" to be considered, *i.e.*, "the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant." The existence of a duty, therefore, ultimately depends upon choices between competing policies. *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 410 N.E.2d 610.

■ Under the circumstances here, we believe there is no question but that the control element of the special duty exception outweighs the public noninvolvement consideration advanced by plaintiff. Were we to hold, as plaintiff contends, that the police owe a duty to provide protection to all foreseeable witnesses from other bystanders at the scene of a crime or at a location "nearby" after the arrest of a perpetrator of a crime, the police would be placed in the position of being insurers of the personal safety of those witnesses, whether they asked for protection or not. We further observe that the likelihood of injury to such witnesses is highly speculative and the burden of guarding against it onerous, if not impossible. At a minimum, police officers

necessarily would be pressed to seek out at the time of a crime all witnesses and determine if they were threatened or might be threatened, which would require the police to attempt to draw fine lines of what might constitute legitimate threats, consume time from other calls where their presence may be immediately required, and severely curtail their discretion in setting priorities in the efficient performance of their duties. To place such a burden on law enforcement would be clearly untenable. Accordingly, while we agree with plaintiff's position as an ideal one in fostering the assistance of the public citizenry in apprehending criminals, it appears to be an impossible one in light of the burden he would have us impose on the police to accomplish this ideal relationship and, in any event, modification of the special duty exception or the Tort Immunity Act to include provision for the situation involved here should be addressed by the legislature rather than the judiciary.

■ Plaintiff's last argument is that the Tort Immunity Act is unconstitutional because it denies him equal protection of the laws and a certain remedy at law. With respect to plaintiff's equal protection claim, he argues that section 9—103 of the Act (Ill. Rev. Stat. 1985, ch. 85, par. 9—103) constitutes an unconstitutional classification of plaintiffs. Section 9—103 provides as follows:

"(a) A local public entity may protect itself against any liability which may be imposed upon it or one of its employees under this Act *** by means including *** insurance ***. ***
*** 

(c) Every policy for insurance coverage issued to a local public entity shall provide or be endorsed to provide that the company issuing such policy waives any right to refuse payment or to deny liability thereto within the limits of said policy by reason of the non-liability of the insured public entity for the wrongful or negligent acts of itself or its employees and its immunity from suit by reason of the defenses and immunities provided in this Act." (Ill. Rev. Stat. 1985, ch. 85, pars. 9—103(a), (c).)

Plaintiff contends that section 9—103 "fosters irresponsibility in government by allowing a local public entity to determine for itself whether or not it will waive its defenses and immunities on which Defendants rely," and thereby creates an unconstitutional classification of plaintiffs, i.e., "those who fortuitously find a remedy because their injury is inflicted by an employee of an insured entity, and those who, as with Plaintiff herein, find themselves facing an uninsured, and therefore, immune Defendant."

Our supreme court rejected a similar argument in *Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 281 N.E.2d 659. There, the court, in finding that section 9—103(b) (now section 9—103(c)) was not special legislation violative of section 22 of article IV of the Constitution of 1870, stated:

"Section 9—103(b) is *** applicable to all local public entities who elect to avail themselves of its provisions and *obviously is the method selected by the General Assembly to enable the governmental units to which it applies to shift the risk of loss to an insurance carrier.* The enactment of the section may be evidence of legislative recognition of the dominant role played by the insurance industry in the field of personal injury litigation.

Certainly, the General Assembly could have achieved complete uniformity by failure to enact section 9—103, or upon enactment could have made the carrying of liability insurance mandatory. It might also, had it chosen so to do, have provided as it did in section 10—101 of the Illinois Vehicle Code [citation] that a public entity may insure against liability for injury or death (arising out of the use of motor vehicles) without including a mandatory waiver of defenses or immunities granted the public entity by statute. It elected to do none of these and instead adopted 9—103 in the form presently in force and effect. We find section 9—103(b) neither arbitrary nor unreasonable and hold that it does not violate section 22 of article IV." (Emphasis added.) 51 Ill. 2d at 280-81, 281 N.E.2d 659.

See also *Antiporek v. Village of Hillside* (1985), 135 Ill. App. 3d 871, 482 N.E.2d 415, *aff'd* (1986), 114 Ill. 2d 246, 499 N.E.2d 1307 (the fact that municipalities have a choice of waiving or not waiving the provisions of the Tort Immunity Act through the purchase of conventional insurance is not inconsistent with public policy or the law).

■■ We also find without merit plaintiff's allegation of an unconstitutional classification in violation of article I, section 2, of the Constitution of 1970, which provides that "no person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." A classification which bears a reasonable relationship to the object of the legislation will withstand constitutional attack. (*Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 108 N.E. 8.) As stated in *Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 281 N.E.2d 659, our supreme court has made it clear that section 9—103(b) (now section 9—103(c)) is the reasonable method chosen by the legislature to enable governmental entities to shift losses. We further observe that it can be persuasively ar-

gued that the insurance provision protects both public funds and the individual members of the public who receive compensation. *Bollinger v. Schneider* (1978), 64 Ill. App. 3d 758, 381 N.E.2d 849.

With respect to plaintiff's argument that the statute's grant of immunity to public entities and their employees violates article I, section 12, of the Constitution of 1970 guaranteeing every person a remedy in law for all injuries and wrongs he receives to his person, we briefly observe that plaintiff has a remedy in his suit against the wrongdoers, Calderon and Rosario, and the Illinois legislature has provided a remedy for victims of crime injured as a result of a crime perpetrated on them (Ill. Rev. Stat. 1985, ch. 70, par. 401 *et seq.*).

In light of the foregoing, we find that the City and its officers owed no special duty to plaintiff. Accordingly, we affirm the trial court's order dismissing count III of plaintiff's complaint for failure to state a cause of action against the City and its officers.

Affirmed.

LORENZ, P.J., and PINCHAM, J., concur.