46

GEORGE RODNEY CHESNUT, Special Administrator of the Estate of DANNELL A. CHESNUT, Deceased, and GEORGE RODNEY CHESNUT, Individually, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed September 25, 2000.*

RALPH T. STENGER, for Claimant.

JIM RYAN, Attorney General (PETER BEARD, Assistant Attorney General, of counsel), for Respondent.

OPINION

JANN, J.

The Claimant filed this complaint in the Court of Claims on August 30, 1992, seeking the statutory limit in damages from the State for the wrongful death of his wife, Dannell Chesnut. The Claimant alleges his wife's death was wrongful and was a direct and proximate result of the negligent and/or willful and wanton actions of one Illinois State Trooper, Brian W. Hollo.

A trial was held before Commissioner, Stephen Clark, on November 10, 1999. The evidence consists of the report of the trial proceedings, exhibits used during the proceeding, and the briefs of Claimant and Respondent. The report of the trial proceedings includes the testimony of Trooper Brian W. Hollo, Claimant, George Rodney Chesnut, Claimant's father, George Roger Chesnut and Claimant's mother, Cleda Chesnut.

The exhibits consist of a traffic citation issued to the Claimant, reports prepared by State troopers, marriage certificate of decedent and Claimant, certificate of live birth of the daughter of the decedent and Claimant, a complaint filed by the Claimant against a party other than the State, certificate of death of Dannell Chesnut, stipulation between Claimant and Respondent, excerpts of life tables prepared by the United States Department of Health and Human Services, autopsy and coroner's reports, funeral bills, coroner's inquest into the death of Dannell Chesnut, letters of administration concerning decedent's estate issued to Claimant, and report of the State Fire Marshall.

At the time of the trial, the Commissioner took under advisement whether to allow the State to file an affirmative defense on the basis of Claimant failing to exhaust all other legal remedies pursuant to section 25 of the Court of Claims Act. (705 ILCS 505/25.) The Commissioner delayed ruling until the time of making his recommendation.

## Facts

According to the evidence, decedent Dannell Chesnut had been out drinking and had visited at least two bars the night of September 2, 1989, despite the fact that she was only 20 years old. Mrs. Chesnut eventually died of smoke inhalation during the early morning hours of

September 3, 1989, from a fire that started as a result of her falling asleep while cooking in her residence located in Panama, Illinois.

Claimant testified that Mrs. Chesnut had called him earlier that evening and that he knew she had been drinking, whereupon he insisted that she return to their home as she was driving. Dannell Chesnut came home around 10:30 p.m. and immediately left in the vehicle of a friend to continue her evening. Claimant stated he became increasingly concerned for his wife's safety as she had a history of problems with alcohol. When she had not returned by 11:30 p.m., Claimant was very agitated and decided to take his infant daughter and attempt to find his wife and return her to their home.

The events that led to this action began when Illinois State Trooper Brian W. Hollo stopped Claimant, George Rodney Chesnut, decedent's husband, for speeding and issued him a citation at 12:00 a.m. At this time, Claimant told Trooper Hollo that he was on his way to pick up his wife from a bar to insure her safety. Claimant also told Trooper Hollo that he wanted the Trooper to come with him to get his wife and also arrest the bartender for serving alcohol to a minor. Trooper Hollo then called for permission and back up and arranged to meet two State Troopers at the Montgomery County Jail, Hillsboro, Illinois. Trooper Hollo also arranged for Claimant's parents to meet them at the jail, so Claimant's parents could pick up Claimant's daughter because Claimant did not want her involved in the proceedings.

It was then discovered that decedent had left the Whitehouse bar, at which she was alleged to have been drinking, and had moved to Haller's bar where Claimant had observed the decedent dancing, but not drinking. Before Trooper Hollo knew that the decedent was no longer

drinking at the Whitehouse and was only dancing at Haller's bar, he told the Claimant that he would wait until the decedent exited the bar before attempting to arrest her. However, when Trooper Hollo learned the decedent was no longer drinking, he determined that there was no longer probable cause on which to base an arrest. At this point, Claimant alleges that Trooper Hollo instructed him to return to Litchfield, Illinois with his parents and that he, Trooper Hollo, would take care of the situation. Claimant testified that he was not allowed to provide for his wife's safety or to return to their home due to following the Trooper's order and relying on his assurances.

Trooper Hollo testified that he never ordered Claimant to go with his parents or to keep away from the decedent or the home shared by decedent and Claimant. Trooper Hollo testified that he told Claimant he should go with his parents. Claimant then went with his parents to their home in Litchfield. Claimant's parents also testified that Trooper Hollo did not "order" Claimant to go home with his parents nor was Claimant threatened with arrest at any time.

Sometime later the decedent returned home and fell asleep while cooking. Subsequently, Dannell Chesnut died of smoke inhalation from a fire caused by an unattended fry pot.

### Commissioner's Ruling on
### Respondent's Motion To File An Affirmative Defense

The Claimant in this case filed a complaint against the Whitehouse bar, but Claimant's attorney determined that the Whitehouse did not have any insurance and the owner of said establishment did not possess any assets from which Claimant could recover a judgment. Claimant also retained an attorney to pursue the other tavern involved, Haller's,

but Claimant's attorney advised him that they were also judgment-proof.

It appears that Claimant did exhaust all other alternate sources of recovery before petitioning the Court of Claims. In this case, through the hiring of two attorneys, it was determined that the only other reasonable prospects for recovery were judgment-proof.

The Commissioner recommended that this Motion be denied and we agree under the facts herein.

## Law

Claimant contends that Respondent should be found liable for breach of a special duty due to Trooper Hollo's negligent failure to protect Dannell Chesnut and for his interference with Claimant's attempt to provide protection to the decedent. The "special duty exception" is an exception to the rule that, generally, a police officer owes only a general duty of protection to citizens or members of the public at large.

To show liability for breach of a special duty, Claimant must first show that a special duty existed. Claimant fails to meet this burden which is enumerated in a four-part test found in *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 565 N.E.2d 654, 658, relied on by Claimant. The "special duty" elements owed by public servants such as police officers as relied on by Respondent are in *Leone v. City of Chicago* (1993), 156 Ill. 2d 33, 619 N.E.2d 119, 121-22.

The first two elements are the same in both authorities. First the government must be uniquely aware of the particular danger or risk to which the plaintiff was exposed. This burden is not met as Trooper Hollo had no way of knowing that the decedent would be killed after falling asleep while cooking.

Second, the government entity must have committed specific acts or omissions. The conflicting testimony leads to the conclusion that Trooper Hollo did not order Claimant to leave with his parents and stay away from the decedent and their home, thus precluding Claimant from protecting the decedent. Trooper Hollo told Claimant that he should go with his parents only. That Claimant subjectively perceived this as an order does not make it a specific act which gives rise to the special duty. Claimant was never arrested, detained or barred from seeking out his wife. In fact, while waiting for his parents, Claimant went to the Whitehouse bar to see if she was still there drinking. He learned from another patron exiting the bar that Dannell Chesnut had just left for Haller's. Claimant told Trooper Hollo of his wife's actions and was advised not to go to that bar because by his own admission, he had become upset and angry and "wanted his wife taught a lesson." It appears most probably that Claimant was merely advised to go home with his parents to "cool off" and avoid becoming involved in a fight or disturbance at Haller's which might lead to his own arrest. With regard to "omission," it is alleged that Trooper Hollo should have protected the decedent and he failed to do so. This is unreasonable in that it would lead to a duty requiring Troopers to protect people in their own homes. In addition, the testimony shows that Trooper Hollo did not promise to protect the decedent but that such a promise was subjectively implied by Claimant.

Third, under *Burdinie*, the specific acts or omissions must be affirmative or willful in nature, and under *Leone* the acts must be negligent. Assuming there were any acts or omissions giving rise to a special duty, they were not negligent. Trooper Hollo was under no obligation to pursue the decedent when she was not illegally drinking pursuant to Claimant's observation. In addition, Trooper Hollo

was not given a physical description of the decedent to allow him to identify the decedent if he were to attempt to find her. Also, Claimant's interpretation of Trooper Hollo's suggestion that he go with his parents does not give rise to an affirmative act which was willful in nature.

Under both authorities, the fourth element is that the injury must occur while the plaintiff is under the direct and immediate control of the entity's employees or agents. In this case, the decedent was in her home, alone, when the fatal events occurred. Claimant also alleges that he was under the control of the Respondent due to Trooper Hollo's suggestion that Claimant go to his parents' house. There is no evidence that Trooper Hollo did nothing to make sure Claimant did same or bar him from returning to his own house. Claimant's perception of Trooper Hollo's words did not place him under the direct and immediate control of Trooper Hollo. Review of the authority relied on by both parties also suggests that Claimant did not meet his burden of proof showing control by Respondent through the actions of Trooper Hollo. One example being *Jane Doe v. Calumet City* (1994), 641 N.E.2d 498, in which the control element was interpreted as being met when the public employee creates the dangerous situation. In this case, the dangerous situation occurred in the decedent's home by her own actions.

Claimant further asserts that Respondent is liable to Claimant for willful and wanton misconduct as alleged under Count II of Claimant's complaint. Claimant alleges that all factors taken together show that Trooper Hollo's conduct was willful and wanton. In *Green v. City of Chicago* (1978), 73 Ill. 2d 100, 382 N.E.2d 1205, cited by Claimant, a street light was not maintained leading to the Claimant's injuries. No such causal connection appears in the record before us.

Claimant further contends that Respondent is liable to the Claimant under count III of Claimant's complaint for the negligent performance of a duty arising from Trooper Hollo's voluntary undertaking.

The facts herein do not support a finding of negligence against Trooper Hollo. As previously discussed, there was no duty assumed by Trooper Hollo to personally insure the safety of Dannell Chesnut after it was determined by Claimant that she was no longer engaged in illegal drinking. Claimant argues imposition of a standard of care which is neither feasible nor desirable in a democratic society, as the Trooper would become a *de facto* arbiter of marital relationships without regard to statutory authority.

While Claimant relies on section 324A of the Restatement (Second) of Torts concerning liability for failure to protect third persons, courts have refused to apply section 319 placing a duty of reasonable care to control third persons that the defendant knows or reasonably should know to be likely to cause bodily harm to others. This approach has been used in *Anderson v. State* (1988), 40 Ill. Ct. Cl. 126 and *Fessler v. R.E.J., Inc.* (1987), 514 N.E.2d 515, 112 Ill. Dec. 852. It seems wise to follow this approach in the present case where Claimant relies on section 324A.

Claimant further contends that the death of Dannell Chesnut was proximately caused in part by the wrongful conduct of the Respondent's agent, Trooper Hollo. However, the evidence and record of the case indicate otherwise. Respondent relies on Black's Law Dictionary which defines proximate cause in part as "that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have occurred" and an "act or omission

immediately causing or failing to prevent injury." The immediate cause of the fatal event in this case was the fire caused by the unattended fry pot. It is not reasonable to tie this unfortunate event to Trooper Hollo's actions, as the decedent's actions in her home were completely independent of any acts performed by Trooper Hollo. More importantly, there is no evidence that Trooper Hollo acted wrongfully. The evidence supports a finding that Trooper Hollo acted properly and followed police procedure throughout the incident despite the incorrect date of his report.

Based upon the record herein, we find Claimant has failed to meet his burden of proof and this claim is hereby denied and dismissed.