Cynthia MEDLEY, Plaintiff,

v.

James A. TURNER, et al., Defendants.

No. 93–C–322.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 10, 1994.

568

Martin J. Burns, Jacobs, Burns, Sugarman, Orlove & Stanton, Anthony Pinelli, Anthony Pinelli, Atty. at Law, Vincent Dominick Pinelli, Edward J. Burke, Burke, Burns, Ellison & Pinelli, Ltd., Chicago, IL, for plaintiff Cynthia Medley.

Mary Ellen Coghlan, Diann Karen Marsalek, Brian Keith Farley, Ill. Atty. Gen. Office, Chicago, IL, for defendants James A. Turner, Craig Thompson, individually, and as a police officers of State of Ill.

Yvonne Denise La Grone, James Patrick McCarthy, Thaddeus S. Machnik, City of Chicago, Law Dept. Corp. Counsel, Chicago,

IL, for defendants John Culloton, Dermitt Kavanagh, Richard Larson, individually, and as a police officers of City of Chicago, a mun. corp.

Roland W. Burris, Ill. Atty. Gen. Office, Chicago, IL, for movant Ill. State Police.

### MEMORANDUM ORDER AND OPINION

CASTILLO, District Judge.

This civil rights action is brought pursuant to 42 U.S.C. § 1983 and state common law theories of negligence and assault and battery. Plaintiff, Cynthia Medley ("Medley" or "plaintiff") has named as defendants two Illinois State Troopers, James A. Turner ("Turner") and Craig Thompson ("Thompson"), individually and as police officers of the State of Illinois, and three members of the 16th District Chicago Police Department ("16th or CPD"), John Culloton ("Culloton"), Dermitt Kavanagh ("Kavanagh"), and Richard Larson ("Larson"), individually and as police officers of the City of Chicago, a municipal corporation.

In Count I, Medley claims that while she was in the custody of Turner and Thompson, Turner assaulted her and Thompson failed to intervene, denying her right to due process by use of excessive force in violation of 42 U.S.C. § 1983. In Count II, Medley claims that Turner and Thompson have conspired to "cover-up the use of excessive force upon [her]," in violation of 42 U.S.C. § 1985. In Count III, Medley alleges that Turner committed an assault and battery upon her while she was handcuffed to a metal bar for purposes of "interrogation." In Count IV, Medley seeks relief for intentional infliction of emotional distress, alleging that Turner assaulted her, and Thompson, who saw Turner begin to assault her, "did nothing to prevent" him from acting. In Count V, Medley contends that Culloton, Kavanagh and Larson ("CPD defendants"), violated § 1983 when they failed to protect her from the alleged assault and battery by Turner. In Count VI,

Medley claims that the CPD defendants were negligent when they failed to protect Medley from assault.

Currently pending before the court are motions for summary judgment filed by defendant Thompson (# 108) and the CPD (# 115). Medley has not filed cross-motions. Also before the court is CPD's Motion to Substitute (# 132–1) and Strike (# 132–2) portions of Medley's Rule 12(N) statement of facts. After careful review, the court finds that the CPD defendants are entitled to summary judgment.[1] Thompson's Motion for Summary Judgment is denied. CPD's Motion to Substitute and Strike is moot.

### LEGAL STANDARDS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1985). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Id.* at 248, 106 S.Ct. at 2510.

"The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Factual disputes that are irrelevant or unnecessary are not material. *Id.*

"Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-

---

1. Although captioned as a "Motion for Summary Judgment," Thompson only addresses Medley's claims in Count I (that Thompson did nothing to prevent Turner from assaulting Medley), and Count IV (that Thompson was not present during the assault and therefore is not liable for inten-

tional infliction of emotional distress). Since Thompson has not offered any arguments or evidence on Count II, the conspiracy claim, the court will consider Thompson's Motion as one for partial summary judgment.

moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As stated in *Anderson,* "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249, 106 S.Ct. at 2511. "When a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250, 106 S.Ct. at 2511. "There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511. If the evidence is merely colorable, or is not significantly probative, or is no more than a scintilla, summary judgment may be granted. *Id.* at 249–250, 106 S.Ct. at 2511.

## BACKGROUND

The following facts are relevant and undisputed. Sometime after 1:30 a.m., on the morning of October 8, 1992, Medley was transported by Trooper Turner to the 16th to process her DUI arrest. 12(m) ¶ 9. Turner escorted Medley through the CPD's front door, walked past the CPD's front desk (where the CPD defendants were on duty), without saying anything more than "hello" or "good morning," and walked down a CPD corridor into a CPD interrogation room with a CPD bench, a CPD metal bar and two CPD desks. 12(m) ¶ 10; Exhibit O. At approximately 1:55 a.m., Trooper Turner uncuffed Medley's right hand, cuffed her left wrist to the metal bar, directed Medley to sit on the bench, and then read the "Warning to Motorist" ("Warning") to her. CPD 12(m), ¶ 13; Exhibit 2, ¶ 78; Turner Dep. at 314, ¶ 11–21; Turner Dep. at 324, ¶ 15–16.

Officer Kavanagh testified that Medley was crying and yelling profanities at Turner after they walked past the swing doors leading to the interrogation rooms and when Turner cuffed her to the metal bar. CPD 12(n) ¶ 32. This initial noise was apparently loud enough that Officer Culloton and two or three CPD officers stopped, looked into the open interrogation room, and inquired whether Turner needed assistance. CPD 12(n) ¶ 34–41. Turner rejected their offers. Turner Dep. at 336. After investigating, Culloton reported to the other CPD defendants that Medley was "physically fine." Kavanagh Dep. at 111–115. Turner testified that he closed the CPD door, CPD 12(n) ¶ 42, "to keep the noise volume down," Turner Dep. at 317 ¶ 20–21, but recalls only that he shut the door after the Warning was given and the CPD officers offered assistance. Turner Dep. at 333 ¶ 19–20.

At 1:57 a.m., Trooper Thompson arrived at the 16th. Thompson 12(n) ¶ 27. Although he was not present when Turner read the "Warning," Thompson subsequently entered the closed interrogation room with Turner to inquire if Medley was willing to take a breath test. Thompson 12(m) ¶ 21; CPD 12(n) ¶ 44. Plaintiff refused. Thompson 12(m) ¶ 22.

At this point, the material facts become disputed. Thompson claims that he left the room immediately after Medley's refusal. Thompson 12(m) ¶ 22. Medley claims that when Turner and Thompson entered the interrogation room, Thompson sat behind a desk and Turner began to assault her. Thompson 12(n) ¶ 28. Medley also alleges that Thompson did not leave the room until after Turner pulled her leg out from underneath her, bent her handcuffed wrist backwards and forced her to lay prone so that her head and elbow hit the bench. Thompson 12(n) ¶ 28. Medley concedes, however, that she did not scream, yell or request Thompson to stay in the room or to help her. Medley Dep. at 169. According to Medley, after Thompson left, Turner began to assault her by pressing her "against the wall," "climbing on top of her," "pawing every part of her body" and stating: "see what can happen to you? This can happen to you" as some kind of weapon was being shoved into her groin area. Thompson 12(n) ¶ 29, 33. After the alleged assault, Medley was left in the room alone. Thompson 12(n) ¶ 33; CPD 12(n) ¶ 44.

All parties concede that, at approximately 2:20 a.m. on the morning of plaintiff's arrest, a female Illinois State Trooper named Tamara Schenkel arrived at the 16th. Thompson 12(n) ¶ 30. As Trooper Schenkel walked past the front desk area of the 16th, Schenkel perceived that CPD personnel gave her "funny looks." Thompson 12(n) ¶ 31; Schenkel Dep. at 43–44. Trooper Schenkel then proceeded to the back of the station, saw defendants Turner and Thompson, Thompson 12(n) ¶ 32, and asked Trooper Turner where his female arrestee was located. Thompson 12(n) ¶ 33. Turner told Schenkel that Medley was handcuffed to a detention bar in the interrogation room across the hall. Id. After a short discussion, Turner agreed to have Schenkel talk to Medley. Id. Schenkel then went into the interrogation room and saw Medley lying on her back on the bench with her wrist twisted in the handcuffs. Id. Medley was crying uncontrollably. Id. When questioned by Schenkel, Medley stated that she had been abused by the trooper who arrested her and that the trooper had slammed her down on the bench and gotten on top of her. Id. Trooper Schenkel left the interrogation room where plaintiff was being held and went across the hall to speak with Turner. Thompson 12(n) ¶ 34. Turner agreed to release plaintiff on an individual recognizance bond, and the two officers agreed that Schenkel would drive Medley to her home. Id. Turner also agreed with Trooper Schenkel to deviate from the normal practice of Illinois State Police Officers by not personally concluding Medley's bonding process, Thompson 12(n) ¶ 35, and leaving the 16th through the back door prior to the plaintiff being let to bond. Id. Trooper Schenkel uncuffed the plaintiff and took her through the bonding process. Id. Plaintiff Medley told the CPD defendants at the front desk what allegedly had happened to her and showed them some of her injuries. Thompson 12(n) ¶ 37. Trooper Schenkel then drove Medley home. Thompson 12(n) ¶ 36.

## DISCUSSION

The issues in this case involve several federal and state law questions. The federal claims will be discussed first, since resolution of these issues establishes the framework for deciding Medley's pendant common law claims.

### A. Federal Claims

In her federal claims against Thompson (Count I) and the CPD (Count V), Medley alleges that Thompson and the CPD failed to protect her from Turner's use of excessive force (e.g., assault) while she was in their custody. Medley claims that the defendants' failure to act was motivated by "deliberate indifference" and constitutes a breach of the defendants' constitutional duty to protect detainees from harm which might or actually does result from custody in violation of § 1983.

#### 1. Section 1983

Liability under § 1983 requires proof of two essential elements: that the conduct complained of (1) "was committed by a person acting under color of state law" and (2) "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by, Daniels v. Williams*, 474 U.S. 327, 331–32, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986). In the present case, there is no dispute that Medley has proved the first element: all defendants were on duty wearing state or city police uniforms and working out of the 16th District Chicago Police Department. The dispute in this case is whether the failure to intervene by Thompson and the CPD defendants deprived Medley of her liberty rights under the Due Process Clause of the Fourteenth Amendment.

■ The seminal case in this circuit on the duty of an officer to intervene to prevent summary punishment is *Byrd v. Brishke*, 466 F.2d 6 (7th Cir.1972). In *Byrd*, the court of appeals held:

One who is given a badge of authority . . . may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge.

466 F.2d at 11. This responsibility applies to both supervisory and nonsupervisory officers. *Id.*

In *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir.1994), the Seventh Circuit recently summarized the scope of this responsibility:

An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know that: (1) excessive force was being used; (2) a citizen has been unjustifiably arrested, or (3) any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*E.g., id.* at 285. *See also Thompson v. Boggs*, 33 F.3d 847, 857 (7th Cir.1994).

Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise. *Anderson v. Branen*, 17 F.3d 552, 557 (2nd Cir.1994). Thus, a failure to intervene is not always actionable. *Yang*, 37 F.3d at 284.

### 2. Pretrial Detainee Excessive Force Standard

■ When a pretrial detainee who has been taken into custody alleges that a police officer failed to intervene while a fellow officer was "beating him up," his claim arises under the Fourteenth Amendment. The Fourteenth Amendment Due Process Clause

imposes a constitutional duty upon state and municipal officials to protect pretrial detainees who are in custody from excessive force by fellow officers or other detainees. *Graham v. Connor*, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1988); *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871–72, 60 L.Ed.2d 447 (1979); *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986); *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). *See also Byrd v. Brishke*, 466 F.2d 6 (7th Cir.1972); *Rascon v. Hardiman*, 803 F.2d 269, 276–77 (7th Cir. 1986); *Anderson v. Gutschenritter*, 836 F.2d 346 (7th Cir.1988); *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir.1992). *See generally DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 1005–06, 103 L.Ed.2d 249 (1989); *Archie v. City of Racine*, 826 F.2d 480, 490–91 (7th Cir.1987). A detainee who alleges a due process violation must show that the officer's failure or refusal to protect the detainee from assault was motivated by "deliberate indifference" or "reckless disregard." [2] *See Swofford*, 969 F.2d at 549; *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Hines v. Sheahan*, 845 F.Supp. 1265, 1267 (N.D.Ill.1994).[3]

Deliberate indifference, however, is not self-defining. The Supreme Court's recent treatment of the term under the Eighth Amendment has, in our view, affected the way excessive force claims by detainees are to be analyzed under the Fourteenth Amendment Due Process Clause.

---

**2.** The standard used for assessing the conduct of an officer who allegedly assaults a detainee is in dispute. *Compare Titran v. Ackman*, 893 F.2d 145, 147 (7th Cir.1990) ("propriety of using force on a person in custody pending trial will track the Fourth Amendment: the court must ask whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them") *with Wilkins v. May*, 872 F.2d 190, 194–95 (7th Cir.1989) (rejecting application of Fourth Amendment standard, court found that Fourteenth Amendment Due Process Clause provides basis for relief if plaintiffs can show "misconduct that a reasonable person would find so beyond the norm of proper police procedure as to shock the conscience, and that is calculated to induce not merely momentary fear or anxiety, but severe mental suffering, in the plaintiff").

**3.** *See also* cases involving failure to provide medical services to pretrial detainees, *Salazar v. City of Chicago*, 940 F.2d 233 (7th Cir.1991); *Brownell v. Figel*, 950 F.2d 1285 (7th Cir.1991); *Archie v. City of Racine*, 826 F.2d 480, 490–91 (7th Cir.1987), and the cases involving state social service workers who allegedly failed to protect children from abuse by their parents, *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 1005–06, 103 L.Ed.2d 249 (1989), or foster parents, *K.H. v. Morgan*, 914 F.2d 846, 849 (7th Cir.1990). In these cases, the Seventh Circuit held that "deliberate indifference" was the proper standard of review for due process claims.

In *Farmer v. Brennan*, —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court rejected the Seventh Circuit's "objective test" for assessing whether government officials were "deliberately indifferent" to the constitutional rights of prisoners under the Eighth Amendment, and adopted a "subjective recklessness" standard instead. Under the objective test, a detainee claiming that officials "punished" him in violation of the Eighth Amendment would need to show that the defendants either had actual knowledge of the threat to his safety or that the risk of violence was so substantial or pervasive that the defendant's knowledge could be inferred. *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085; *Goka v. Bobbitt*, 862 F.2d 646 (7th Cir.1988); *Duckworth v. Franzen*, 780 F.2d 645, 651 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986); *Salazar v. City of Chicago*, 940 F.2d 233, 235 (7th Cir.1991); *Hines v. Sheahan*, 845 F.Supp. 1265, 1267 (N.D.Ill.1994). Under the subjective test, a prisoner alleging an Eighth Amendment violation must show that "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, —— U.S. at ——, 114 S.Ct. at 1979 ("official [must] know of and disregard an excessive risk to inmate health or safety").

The subjective test adopted in *Farmer* mandates an inquiry into what a government official subjectively knew, not what the official should have known based on the objective obviousness of a risk. Therefore, the issue of whether an official had the requisite knowledge will generally be a question for the trier of fact. Government officials may prove, however, that they lacked knowledge or were unaware even of an obvious risk in an attempt to defeat summary judgment or to prevent a verdict in favor of the plaintiff. *Farmer*, —— U.S. at ——, 114 S.Ct. at 1982.

The question *Farmer* leaves open is whether "deliberate indifference" has a subjective meaning under the Fourteenth Amendment Due Process Clause. In *Farmer*, the Court rejected the argument that the objective test for "deliberate indifference" described in *Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989),[4] should govern liability under the Eighth Amendment. *Farmer* distinguished (rather than overruled) *Canton* on the basis that "considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity, as distinct from that of a governmental official." *Farmer*, —— U.S. at ——, 114 S.Ct. at 1981. Although not acknowledged by the Court, *Canton* was a Fourteenth Amendment Due Process case. This oversight leaves unanswered a very fundamental question: did *Farmer* distinguish Canton on the basis of "entities" and "officials" or between the Eighth and the Fourteenth Amendment?

Any distinction based on "entities" and "individuals," rather than between the "Eighth Amendment" and "Fourteenth Amendment" cannot withstand scrutiny, given that the "considerable conceptual difficulty" which "would attend any search for the subjective state of mind of a government entity" is not present in a case like this one where three members of the Chicago Police Department and an Illinois State Trooper, rather than the City of Chicago, are charged with violating the Fourteenth Amendment Due Process Clause. In addition, any distinction between the Eighth and the Fourteenth Amendment would undermine the fundamental interplay between the two amendments.

■ It is well-established that the reach of protection for pretrial detainees alleging claims of excessive force is coextensive under the Eighth and Fourteenth Amendments. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983), *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986); *Swofford v. Marshall*, 969 F.2d 547 (7th Cir.1992); *Salazar v. City*

---

**4.** In *Canton*, the Supreme Court held that "a municipality may be liable" for failure to train its employees when the municipality's failure shows a "deliberate indifference to the rights of its inhabitants." *Id.* 489 U.S. at 389, 109 S.Ct. at 1205. *Canton* then set out an objective standard which permits municipal liability to be premised on obviousness or constructive notice. *Id.* —— U.S. at ——, 114 S.Ct. at 1980–81.

of Chicago, 940 F.2d 233, 239–40 (7th Cir. 1991). "A pretrial detainee's right not to be punished is at least as expansive as a convicted prisoner's freedom from cruel and unusual punishment." Swofford, 969 F.2d 547, citing, City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). Moreover, "[p]unishment is punishment, and there is no reason why the term should mean two different things in the Eighth and Fourteenth Amendment contexts." Salazar, 940 F.2d at 240.

After reading Farmer with the cited cases, we conclude that, because the protections guaranteed by the Eighth and Fourteenth Amendments are the same, the standards used to guarantee these protections must also be the same. Therefore, the subjective "deliberate indifference" standard which now applies to claims of punishment under the Eighth Amendment under Farmer should also apply to Fourteenth Amendment Due Process claims brought by pretrial detainees alleging excessive force.

### 3. CPD's Motion for Summary Judgment

■ Applying this standard to the facts of this case, the court finds that CPD's Motion for Summary Judgment must be granted. Analysis of Medley's claim against the CPD must proceed in two stages: (1) did the CPD have custody over Medley; and (2) did the CPD defendants subjectively know that Medley was in danger of being (allegedly) assaulted by Turner.

#### a. Custody

■ The test used to determine a custodial setting is whether a reasonable, innocent person would have believed that he or she was free to leave or was expressly or impliedly bound to remain in the presence of the police. U.S. v. Kelly, 991 F.2d 1308, 1312 (7th Cir.1993). Medley claims that the CPD defendants had "constructive" custody over her person because the CPD defendants were on duty while she was jailed in the 16th to a CPD metal bar. From these facts, Medley concludes that the CPD defendants had a constitutional duty to protect her from being assaulted by the arresting officers, even if those officers were employees of the

State of Illinois rather than the City of Chicago. The CPD officers claim that Medley was in the sole custody of the Illinois State Troopers who arrested and detained her, and thus the CPD did not owe Medley a duty of care.

The facts clearly indicate that Medley was in the custody of the Illinois State Troopers who arrested her and had her handcuffed and detained in the CPD's interrogation room. The facts are not as clear with respect to whether a reasonable person would have believed that she was in the CPD's custody. Although Medley was detained on the CPD's property, her "jailers" were the Illinois State Troopers and the handcuffs imprisoning her belonged to the State.

The court does not need to decide whether the CPD exercised "constructive" custody over plaintiff. Even if the undisputed facts provide a basis for this finding, CPD cannot be held liable for failing to protect Medley from harm, because the undisputed facts do not raise a reasonable inference that the CPD defendants had any knowledge of plaintiff's danger.

#### b. Deliberate Indifference

Although the question of deliberate indifference is, as plaintiff argues, a question best left to the trier of fact, in this case there is no genuine issue of fact, because there is no evidence to support a reasonable inference that the CPD defendants were subjectively aware that Turner was (allegedly) assaulting Medley. Consequently, there is no evidentiary basis to support the conclusion that the CPD defendants failure to protect Medley was the result of "deliberate indifference" or "subjective recklessness."

Medley claims that the CPD defendants' failure to protect her from the alleged assault and battery by defendant Turner was the result of deliberate indifference to: (1) established CPD procedures (which did not permit female detainees to be interrogated by male officers without a female officer present); and (2) her cries and screams during the interrogation. The CPD defendants claim that they did not know that Medley was in

danger of being (allegedly) assaulted by Turner.

The evidence shows that Medley was screaming and yelling at Turner on the morning of the alleged assault. In fact, defendant Kavanagh's uncontroverted testimony is that Medley's screaming was a "continual disturbance" for approximately 20 minutes. Kavanagh Dep. at 94. However, the evidence also shows that the CPD defendants checked out this noise to either "make sure that Medley was alright," or to make sure that Turner "quieted her down." Turner Dep. at 343. Kavanagh also testified that Officer Culloton, the shift commander, asked him where the noise was coming from, went to investigate the noise and reported that Medley was "physically fine," and in no danger. Kavanagh Dep. at 111–115. Ironically, Medley concedes that she was not screaming or making any noise during the assault.

The undisputed facts also indicate that each time a CPD officer made inquiries about the noise, they found Turner and Medley inside the interrogation room with the door open. At the time of these inquiries, Medley was not being assaulted. Furthermore, although Turner and Thompson concede that the door to the interrogation room was closed at some point after the CPD officers investigated the noise, there is no evidence that the CPD defendants were subjectively aware that Turner and Medley were in the interrogation room together behind a closed door.

*Farmer* indicates that liability cannot be imposed for an alleged failure to intervene simply because the risk of danger was "obvious" to a reasonable person. Medley is essentially contending that it should have been obvious to the CPD defendants that she was in danger of being assaulted by Turner, given her screaming and given the CPD policy prohibiting male officers from interrogating female detainees without the presence of a female officer. Even if objective obviousness were still the standard, the facts do not tend to prove that the risk of harm to Medley was obvious enough to make the CPD defendants' failure to intervene deliberately indifferent. First, there is no evidence indicating that the CPD policies were applicable to Illinois State Troopers and that the CPD defendants had a duty to enforce them with Troopers. Second, if Medley was not screaming for help during the assault, even a reasonable person could not be expected to intervene. Thus, these facts do not indicate that the CPD defendants had an awareness sufficient to give them a realistic opportunity to intervene to prevent the alleged assault from occurring.

The court therefore concludes that, "the [CPD] defendants had no knowledge that plaintiff was being attacked. They did not see the attack. Plaintiff did not cry out that she was being attacked. Further, these defendants had no notice that Trooper Turner was predisposed to attack persons in his custody." CPD Reply at 16.

■ The only inference which tends to support Medley's claim that the CPD defendants may have subjectively known that she was in danger relates to Trooper Schenkel's "perception" that the CPD defendants at the front desk gave her "funny looks" when she arrived at the 16th. This perception, however, is not sufficient by itself to provide a reasonable jury with enough evidence to find in plaintiff's favor.[5] Thus, the court will grant CPD's motion for summary judgment.[6]

### 4. Thompson's Motion for Summary Judgment

■ Thompson's argument that his physical presence during the assault is necessary

---

5. Schenkel's perception does not necessarily prove that the CPD defendants were subjectively aware of an assault against Medley. There are many reasons why the CPD defendants may have had "funny looks." For instance, Schenkel was an Illinois State Trooper, just like Turner and Thompson. Given that Turner and Thompson had brought an arrestee to the 16th who had been making a "continual disturbance," the CPD defendants may have viewed the entry of another Illinois State Trooper with disfavor.

6. Given this ruling, the issue of qualified immunity is therefore not an issue in this case. However, the law is (and was) clear that police officers have a constitutional duty to protect pretrial detainees in their custody from assault by a fellow officer. *Byrd v. Brishke,* 466 F.2d 6 (7th Cir.1972).

for liability is unavailing. Thompson claims that he is not liable under § 1983 because he did not cause or personally participate in the alleged assault. Thompson's theory is based on the undisputed fact that he was not physically "present" during the assault. Thompson concludes that the lack of his physical presence during the alleged assault constitutes a lack of "personal involvement with plaintiff's claim of excessive force." Medley argues that Thompson is liable under § 1983, even if he did not have any "direct personal involvement" in the use of excessive force, because he deliberately left the room knowing that Turner had begun to assault her.

■ Although "personal participation" and physical "presence" are not necessary elements for imposing liability under § 1983 for failure to act, "knowledge" of the assault is an essential factor. In the present case, the question of Thompson's knowledge is, as plaintiff argues, a material question of fact.

Medley claims that Thompson was sitting at a Table when Turner pulled her leg out from underneath her, bent her handcuffed wrist backwards and forced her to lay prone so that her head and elbow hit the bench. Medley also claims that as her head and elbow hit the bench, Thompson left the room without saying anything. 12(n) ¶ 28. If Medley's account of the facts is true, then Thompson clearly had a "realistic opportunity" to intervene and protect Medley from assault. Thompson, on the other hand, claims that he left the room after Medley refused the breath test (but before the alleged assault) and shut the door. Thompson's 12(m) ¶ 22; Medley's Exhibit F at 145, ¶ 11–12.

These two versions of the facts create a genuine issue as to whether Thompson was subjectively aware that Turner was (allegedly) assaulting plaintiff and thus whether Thompson's failure to protect her was "deliberately indifferent" in violation of the Fourteenth Amendment Due Process Clause.

Therefore, the Court denies Thompson's Motion for Summary Judgment on Count I.

## B. *Pendant State Law Claims*
### 1. Negligence

■ In Count VI, Medley contends that the CPD defendants were negligent because they allowed her to remain alone with Turner and therefore permitted a dangerous situation to exist while she was in their custody. The CPD defendants claim that they were not negligent because: (1) they "were never uniquely aware that plaintiff was going to be assaulted by an Illinois state trooper;" and (2) plaintiff "was never under the control of the Chicago Police defendants." Medley's rejoinder is that these assertions are "plainly contested issues of fact."

■ The court finds that the CPD defendants are not individually negligent.[7] In an action based on negligence, the plaintiff must establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach. *Kirk v. Michael Reese Hospital and Medical Center*, 117 Ill.2d 507, 525, 111 Ill.Dec. 944, 513 N.E.2d 387 (1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988). The existence of a duty is a question of law properly addressed by the court on a motion for summary judgment. *Fancil v. Q.S.E. Foods, Inc.*, 60 Ill.2d 552, 555, 328 N.E.2d 538 (1975). Absent a legal duty, there can be no recovery in negligence as a matter of law, and summary judgment in favor of the defendants is proper. *Keller v. Mols*, 129 Ill. App.3d 208, 84 Ill.Dec. 411, 472 N.E.2d 161 (1st Dist.1984).

■ It is well-established that a municipality and its employees are not liable for failure to supply general police or fire protection, but liability has been found where the municipality owes a "special duty" to a particular individual. *Marshall v. Ellison*, 132 Ill.App.3d 732, 87 Ill.Dec. 704, 477 N.E.2d 830 (4th Dist.1985). In determining whether

---

7. Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1–204, local governmental employees such as the CPD defendants may not be held liable for the acts or omissions of any other person. Thus, each of the Chicago Police defendants may be held liable, if at all, only for his own action, or for his inaction in the face of a duty to act.

a special duty is owed, the following requirements must be met:

1. the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed;

2. there must be allegations of specific acts or omissions on the part of the municipality;

3. the specific acts or omissions must be either affirmative or wilful in nature;

4. the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality.

*Marvin v. Chicago Transit Authority,* 113 Ill.App.3d 172, 68 Ill.Dec. 786, 789, 446 N.E.2d 1183, 1186 (1st Dist.1983). In order to maintain such an action, all four elements must be proven. *Fessler by Fessler v. R.E.J., Inc.,* 161 Ill.App.3d 290, 112 Ill.Dec. 852, 857, 514 N.E.2d 515, 520 (4th Dist.1987), *petition for leave to appeal denied,* 118 Ill.2d 542, 117 Ill.Dec. 224, 520 N.E.2d 385 (1988).

■ With respect to the first element, CPD claims that they were not "uniquely aware" of any danger to plaintiff by virtue of their office, because the particular harm Medley allegedly experienced was not "reasonably foreseeable." The existence of a legal duty is premised "on whether the harm reasonably was foreseeable." *Kirk,* 117 Ill.2d at 507, 111 Ill.Dec. 944, 513 N.E.2d 387. To establish reasonable foreseeability, a plaintiff "must show more than defendants could have foreseen that the event was possible; the [plaintiff] must show the occurrence was objectively reasonable to expect." *Dunaway v. Ashland Oil, Inc.,* 172 Ill.App.3d 712, 715, 122 Ill.Dec. 557, 526 N.E.2d 950 (5th Dist.1988), *app. denied,* 123 Ill.2d 556, 128 Ill.Dec. 889, 535 N.E.2d 400 (1988).

In this case, Medley must show that the CPD defendants were aware of the particular danger that Turner posed to her. In Illinois, a person has no duty to anticipate the criminal acts of third parties. *Boyd v. Racine Currency Exchange, Inc.,* 56 Ill.2d 95, 97–98, 306 N.E.2d 39, (1973) *citing,* Prosser, Handbook of the Law of Torts (4th ed. 1971), sec. 33. This rule does not exclude police officers. CPD argues that it did not and could not reasonably foresee that Turner allegedly would assault Medley, and cites *Rush v. City of Chicago,* 163 Ill.App.3d 725, 115 Ill.Dec. 52, 517 N.E.2d 17 (1st Dist.1987) as support for this theory. The basis for CPD's argument is erroneous: assault and battery is a tort which constitutes a civil cause of action. Therefore, *Rush* is inapposite.

Other facts, however, support the finding that the danger Turner allegedly posed was not reasonably foreseeable. For instance, Turner previously had not assaulted anyone at the 16th; Turner did not make threatening statements to plaintiff in the presence of CPD defendants; Medley concedes that she did not scream or cry out for help during the alleged assault; and none of the CPD defendants ever saw Medley being assaulted.

■ Further, Medley cannot prove that she was under the direct and immediate control of the CPD defendants. The test under Illinois law for determining whether an individual was under the direct and immediate control of police officers has traditionally focused on whether the individual had been "called into a position of peril" by the police. *Marvin v. Chicago Transit Authority,* 113 Ill.App.3d 172, 68 Ill.Dec. 786, 446 N.E.2d 1183 (1st Dist.1983). Recently, in the case of *Jane Doe v. Calumet City,* 161 Ill.2d 374, 204 Ill.Dec. 274, 641 N.E.2d 498 (1994), the Illinois Supreme Court has rearticulated that test as requiring that "the public employee initiates the circumstances which create the dangerous situation." 161 Ill.2d at 386, 204 Ill.Dec. at 280, 641 N.E.2d at 504. The facts of this case clearly demonstrate that the CPD defendants did not "initiate" the circumstances which created the allegedly dangerous situation between Turner and Medley. Turner and Thompson arrested Medley, brought her to the CPD interrogation room and handcuffed her to the metal bar. If Turner assaulted Medley, he is the public employee who initiated the circumstances creating the dangerous situation.

At most, the facts indicate that the alleged assault took place on CPD property in close proximity to the CPD defendants. The close proximity of the defendants to the alleged assault, and the CPD defendants willingness to allow Turner to use the interrogation room

constitutes neither negligence nor "initiation" of a dangerous situation indicating direct and immediate control of the plaintiff. Thus, CPD's Motion for Summary Judgment must be granted as to Count VI.

### 2. Intentional Infliction of Emotional Distress

█ In Count IV, Medley contends that Thompson's failure to intervene and or protect her from Turner constituted intentional infliction of emotional distress. Thompson claims that Medley cannot establish extreme and outrageous conduct by defendant Thompson, an element of her claim for intentional infliction of emotional distress, because Thompson "did not participate in the alleged assault." Medley's rejoinder is that Thompson was "present at the inception of the attack on her and failed to stop it."

█ The court finds that Thompson's Motion for Summary Judgment must be denied. The case of *McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806 (1988), continues to be the seminal law in Illinois for tort claims alleging intentional infliction of emotional distress. In *McGrath*, the Supreme Court of Illinois held that a claim for intentional infliction of emotional distress must be supported by facts which establish that:

(1) the defendant's conduct was truly extreme and outrageous;

(2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would cause severe emotional distress; and

(3) the conduct, in fact, caused severe emotional distress.

*Id.* at 87, 127 Ill.Dec. 724, 533 N.E.2d 806. The conduct of the tortfeasors must also exceed "all possible bounds of decency" and the distress must be so severe "that no reasonable man could be expected to endure it." *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765 (1976).

The questions of fact the court previously identified in deciding to deny Thompson's

Motion for Summary Judgment are also applicable to Count IV: the parties dispute whether Thompson knew that Turner was assaulting or about to assault Medley; and the parties dispute whether the assault actually occurred. Until the trier of fact determines that an assault occurred, and Thompson knew that Medley was being assaulted, it cannot be determined whether Thompson's "conduct" was extreme and outrageous.

The court previously held [8] when denying Thompson's Motion to Dismiss that Thompson had a "degree of power and authority . . . over Medley (both by reason of [his] office and because of the physical restraint that had been placed on her)" which could lend itself to establishing that Thompson's "failure to protect" Medley was "outrageous." The court also noted that Medley need not show physical injury to prevail, since "the tort's very label of 'emotional distress' tells us otherwise." These rulings remain the law of the case and will guide future analysis of this issue. The material factual issues remain disputed, however, and thus, Thompson's Motion for Summary Judgment on Count IV is also denied.

### CONCLUSION

The Clerk of the Court is directed to enter judgment in favor of defendants JOHN CULLOTON, DERMITT KAVANAGH and RICHARD LARSON, individually and as police officers of the City of Chicago, a municipal corporation, and against plaintiff, Cynthia Medley, on Counts V and VI of the Complaint. The Motion for (Partial) Summary Judgment filed by defendant, CRAIG THOMPSON, on Counts I and IV is denied (# 108–1). CPD's Motion of Substitute (# 132–1) and Strike (# 132–2) portions of Medley's 12(n) statement is moot.

The remaining parties are ordered to file a Final Pretrial Order, in accordance with Local Rule 5, by December 19, 1994. This case will be set for a status hearing on November

---

**8.** This case was originally assigned to Judge Shadur's calendar. By order of the Executive Committee, it was reassigned to this court's calendar effective May 25, 1994. Judge Shadur ruled on Thompson's Motion to Dismiss Count IV.

29, 1994 at 9:00 a.m. for the express purpose of setting a firm trial date.