MARY ANNE COLLINS, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellee.

First District (2nd Division)   No. 1—96—2442

Opinion filed February 18, 1997.

Michael J. Lyle and Kathleen H. Klaus, both of D'Ancona & Pflaum, of Chicago, for appellant.

Mark F. Smolens and Richard T. Ryan, both of Flynn, Murphy, Ryan & Seyring, of Chicago, for appellee.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

After a fellow passenger, Mauro Sisto, assaulted her on a Chicago Transit Authority train, plaintiff Mary Anne Collins filed a complaint against Sisto and the Chicago Transit Authority (CTA). Pursuant to the CTA's motion, the court dismissed it from the action based on its immunity under section 27 of the Metropolitan Transit Authority Act (70 ILCS 3605/27 (West 1992)) (Metropolitan Transit Act). Plaintiff appeals the dismissal on the basis that, notwithstanding any immunity it may have under the Metropolitan Transit Act, the CTA was liable for her injuries because it owed her a special duty.

The parties raise the following issues on appeal: (1) whether the allegations of plaintiff's complaint were sufficient to establish that the CTA owed her a special duty; (2) whether the special duty exception to governmental immunity applies to immunity under section 27 of the Metropolitan Transit Act; and (3) whether applying a special duty exception to immunity under the Metropolitan Transit Act violates the Illinois Constitution of 1970.

In her complaint, plaintiff alleged the following. She used the CTA O'Hare/Douglas elevated train (Blue Line) to commute regularly from her home in Park Ridge to her job in downtown Chicago. She rode a CTA train rather than a Metra train because it was cheaper to do this, and the Metra train schedule was not convenient.

Over a period of weeks in the summer of 1995, Sisto stalked and assaulted plaintiff on Blue Line trains. Initially, he merely followed her or stood near her. She tried to avoid him, but he continued to pursue her, and his actions increased in frequency and intensity. For example, he approached her and pressed his pelvis against her.

Plaintiff further alleged that she placed telephone calls to the CTA, in which she complained about Sisto's behavior and asked for protection from him. The CTA, however, did nothing.

On July 19, 1995, plaintiff called the CTA again to request protection for herself and for other female passengers whom Sisto was pursuing. After this call, the CTA expressly promised to provide a security guard to walk through the trains in order to deter Sisto and to protect female passengers. In reliance on this promise, plaintiff continued to ride the Blue Line trains.

On the morning of July 20, 1995, plaintiff saw Sisto on the platform at a Blue Line stop. She ran from him. He chased her in and out of a train, but she escaped when the doors to the train closed while he was on the train and she was on the platform. According to plaintiff, there were no CTA security guards on the train.

Plaintiff's husband telephoned the president of the CTA later that day. He spoke to the president's assistant and informed the assistant of the incident involving plaintiff and Sisto. He asked the CTA to honor the promise it had made to his wife. The assistant informed plaintiff's husband that the president was in a meeting but that someone would return his call shortly.

That evening, when plaintiff was riding home on a Blue Line train, Sisto cornered her and placed his pelvis against her. At the next stop, plaintiff informed the conductor of the assault, and the conductor relayed the information to a dispatcher. Although there was a police station across the street from the California stop, which was a mile away, the conductor informed plaintiff that the police would be waiting at a stop that was several miles away. At no time did a security guard appear to assist plaintiff.

When Sisto saw plaintiff talking to the conductor, he exited the train at the California stop. Plaintiff informed the conductor of this, but he refused to apprehend Sisto or to otherwise help her. CTA personnel summoned the police only when plaintiff informed a ticket agent at the California stop that Sisto had assaulted her. Police arrested Sisto, and he pleaded guilty to assaulting plaintiff. Later that night, the head of security for the CTA admitted to plaintiff and her husband that the CTA had "screwed up."

As a result of the assault, plaintiff suffered extreme emotional distress and anxiety. In addition, she was unable to ride the CTA and believed her job was in jeopardy. The stress produced by the assault negatively affected her job performance, and the longer commute necessitated by her inability to ride the CTA caused her to be late for work.

Count I of her complaint contained a negligence claim against

the CTA. Plaintiff alleged that she notified the CTA of Sisto's assaults on at least two occasions and, after it became aware of this particular danger, it undertook specific acts by promising to provide security on the Blue Line. Despite this promise, plaintiff was injured while under the direct and immediate control of the CTA. She alleged that its duty of care to her arose as a result of this promise and as a result of its status as a common carrier.

According to plaintiff, the CTA breached its duty of care by failing to provide security guards, by failing to institute appropriate security measures to protect her and other female passengers, by failing to properly train personnel regarding procedures following an attack on a passenger, by failing to implement proper procedures to notify police and security personnel when passengers are in danger, and by failing to stop Sisto's assaults.

Count II of plaintiff's complaint was a claim against the CTA for intentional infliction of emotional distress. In this count, plaintiff alleged that the CTA "willfully and maliciously refused" to provide her with assistance when she informed it about Sisto's assaults and about his escape from the train on January 20, 1995. According to plaintiff, its refusal to act was intentional and reckless.

Count III of the complaint was a claim against Sisto for battery. Count IV was a claim against him for intentional infliction of emotional distress.

■ The CTA filed a motion to dismiss pursuant to section 2—619.1 of the Code of Civil Procedure (735 ILCS 5/2—619.1 (West 1992)). First, it argued that the circuit court should dismiss counts I and II of plaintiff's complaint under section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1992)) because section 27 of the Metropolitan Transit Act provided it with immunity from liability for plaintiff's claim. This statute provides:

> "Neither the Authority, the members of its Board nor its officers or employees shall be held liable for failure to provide a security or police force or, if a security or police force is provided, for failure to provide adequate police protection or security, failure to prevent the commission of crimes by fellow passengers or other third persons or for the failure to apprehend criminals." 70 ILCS 3605/27 (West 1992).

According to the CTA, this immunity applied to plaintiff's claim, the allegations of her complaint were insufficient to show that it owed her a special duty, and it would be unconstitutional to apply a judicially created special duty exception to a statutory immunity. The CTA also argued that plaintiff's allegations were insufficient to show intentional infliction of emotional distress.

After a hearing, the circuit court dismissed plaintiff's claims against the CTA with prejudice. It stated:

"[The CTA's section] 2—619 motion is granted as to Counts I & II, on the ground that [section] 27 of the Metropolitan Transit Act, 70 ILCS 3605, provides absolute immunity for injuries incurred for the failure to provide a police force or the failure to prevent the commission of crimes by fellow passengers or third persons."

The court also found that there was no just cause for delaying the appeal of the order. When the parties asked the court for clarification of its ruling, the court stated that it had not based its dismissal of the complaint on a finding that a special duty exception to the Metropolitan Transit Act is unconstitutional.

Plaintiff does not dispute that, absent an exception, section 27 of the Metropolitan Transit Act would provide the CTA with immunity from liability for the injuries plaintiff alleges in her complaint. Instead, she argues that the CTA is liable under a special duty exception to immunity under this statute. According to plaintiff, the special duty exception applies because she alleged facts demonstrating that the CTA "voluntarily assumed a special duty to her, separate from the general duty it owed its other passengers." The CTA responds that the allegations of plaintiff's complaint were insufficient to show that the CTA owed her a special duty.

Plaintiff replies, however, that we should reject the CTA's argument that her special duty allegations were insufficient. According to plaintiff, this argument is based on the CTA's section 2—615 motion, and the circuit court did not rule on this motion. In addition, she asserts that she alleged sufficient facts to show that the CTA owed her a special duty.

■ Contrary to plaintiff's argument, we may affirm the dismissal based on the insufficiency of her special duty allegations. Plaintiff is correct that the circuit court's dismissal was premised on the CTA's section 2—619 motion. However, we may affirm a dismissal on any basis in the record regardless of whether the circuit court relied on that basis or whether its reasoning was correct. See *Nikolic v. Seidenberg*, 242 Ill. App. 3d 96, 99, 610 N.E.2d 177 (1993).

■ To avoid dismissal of her complaint, a plaintiff may not merely allege a duty, she must allege facts from which the law will impose a duty, facts showing a breach of that duty, and a resulting injury. *Marvin v. Chicago Transit Authority*, 113 Ill. App. 3d 172, 176, 446 N.E.2d 1183 (1983). In deciding whether a plaintiff has stated a cause of action, a court accepts all well-pleaded facts as true and draws all reasonable inferences therefrom in favor of the plaintiff, but a court does not accept as true conclusions of law or fact that are unsup-

ported by allegations of specific fact. *Majumdar v. Lurie*, 274 Ill. App. 3d 267, 268, 653 N.E.2d 915 (1995).

■ Illinois courts have held that, under common law, municipalities are generally not liable for failing to supply police or fire protection and are not liable for injuries police officers or fire fighters negligently cause while performing their official duties. *Leone v. City of Chicago*, 156 Ill. 2d 33, 37, 619 N.E.2d 119 (1993). Courts have recognized a "special duty" or "special relationship" exception to this immunity if a plaintiff shows that the municipality owes her a duty that is different from the duty it owes the general public. *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 507-08, 565 N.E.2d 654 (1990). To show that a special duty exists, a plaintiff must establish (1) that the municipality is uniquely aware of the particular danger or risk to the plaintiff; (2) that the municipality made specific acts or omissions; (3) that these acts or omissions were affirmative or willful in nature; and (4) that the plaintiff's injury occurred while the plaintiff was under the direct and immediate control of employees or agents of the municipality. *Burdinie*, 139 Ill. 2d at 508.

In this case, the CTA disputes the sufficiency of plaintiff's allegations concerning only the first and fourth elements that establish a special duty. According to the CTA, plaintiff did not sufficiently establish its awareness of a particular danger to her because she alleged that she asked the CTA to provide a security guard, not only to protect her, but to protect her *and* other female passengers. Plaintiff counters that she did show the CTA's awareness of a particular danger to her through her allegations that she informed the CTA that Sisto was stalking her, specifically.

As the court stated in *Leone v. City of Chicago*, 156 Ill. 2d 33, 40, 619 N.E.2d 119 (1993), the "unique awareness" element is satisfied if the plaintiff alleges that the municipality is "on notice that a preventable danger threatens a particular individual of whom it is aware." Plaintiff's allegations in this case were sufficient to meet the unique awareness element. She alleged that Sisto followed her, approached her, and pressed his pelvis against her. She further alleged that she informed the CTA of this behavior, and her husband informed it that Sisto had chased her on July 20. Although she included other female passengers in her request for protection, her other allegations establish that the CTA was aware that Sisto posed a threat to her in particular.

Although plaintiff sufficiently alleged the CTA's unique awareness of a particular danger to her, her allegations failed to establish that the CTA had direct and immediate control over her. Illinois courts have repeatedly held that, to establish direct and immediate

control, a plaintiff must allege that the public employee " 'creates a position of peril ultimately injurious to a plaintiff, as opposed to situations where a plaintiff merely seeks protection from the public employee that is not normally provided.' " *Leone*, 156 Ill. 2d at 39, quoting *Burdinie*, 139 Ill. 2d at 525. Whether there is direct and immediate control depends on whether the public official initiated the circumstances that created the dangerous situation. *Burdinie*, 139 Ill. 2d at 525-26; *Thames v. Board of Education*, 269 Ill. App. 3d 210, 216-17, 645 N.E.2d 445 (1994). If a plaintiff initiates the contact with the public employee, she is not under the direct and immediate control of the municipality. *Burdinie*, 139 Ill. 2d at 526.

For example, in *Leone v. City of Chicago*, 156 Ill. 2d 33, 619 N.E.2d 119 (1993), our supreme court held that, despite the immunity provided by the Tort Immunity Act, the city was liable under the special duty exception for injuries caused by the negligence of one of its police officers. The police officer had stopped the plaintiff because her license plate was expired. When the plaintiff expressed disbelief concerning the reason for the stop, the officer told her to look at her license plate if she did not believe him. The plaintiff exited her car and, as she was looking at the license plate on the rear of her car, a passing motorist struck the rear of the police car, which was parked behind the plaintiff's car. As a result, the plaintiff was pinned between her car and the police car. *Leone*, 156 Ill. 2d at 35-36.

The city argued that it was immune from liability under the Tort Immunity Act, which protected it from liability for the failure to provide police protection and for injuries resulting from the acts or omissions of a public employee in enforcing the law, unless the acts are the result of willful and wanton conduct. See 745 ILCS 10/4— 102, 2—109, 2—202 (West 1992). The court concluded, however, that the city was liable under a special duty exception to this immunity. *Leone*, 156 Ill. 2d at 40-41. The court found that the officer had exercised direct and immediate control over the plaintiff. He had initiated and created the dangerous situation that led to the plaintiff's injuries by ordering her to stop in an active traffic lane, by parking close to her, and by directing her to the area between their cars. *Leone*, 156 Ill. 2d at 39-40.

Similarly, in *Anthony v. City of Chicago*, 168 Ill. App. 3d 733, 523 N.E.2d 22 (1988), the court found that the special duty exception applied because fire fighters had exerted direct and immediate control over the plaintiff. The plaintiff, a civilian, alleged that he was injured when fire fighters directed him to help them in fighting a fire and directed him to open an elevator door. The court held that the fire fighters owed him a special duty because they initiated the events

that were immediately accountable for the plaintiff's injuries. *Anthony*, 168 Ill. App. 3d at 738; see also *Gardner v. Village of Chicago Ridge*, 71 Ill. App. 2d 373, 378-79, 219 N.E.2d 147 (1966) (officers exercised direct and immediate control when the plaintiff complied with their request to identify suspects, and those suspects beat the plaintiff).

By contrast, courts have found no direct and immediate control where the plaintiff asks a public employee to act and the employee acts or fails to act in such a way that the plaintiff is injured. For example, in *Doe v. Calumet City*, 161 Ill. 2d 374, 641 N.E.2d 498 (1994), the plaintiffs, Jane Doe and her two children, Betty and John, were in their apartment when a man entered and began sexually assaulting Jane and threatening to kill her and her children. When he complied with her request to move her children to a different room, she ran from the apartment. He chased her but then returned to the apartment, where the children had remained. The police arrived but refused to enter the apartment to rescue the children. One police officer refused on the basis that he did not want to be liable for the property damage associated with breaking down the door to the apartment. The officers physically restrained Jane from reentering the apartment to rescue her children. After a half an hour, police finally entered the apartment, where they found the intruder raping Betty. He had also choked and threatened John. *Doe*, 161 Ill. 2d at 381-83.

The court held that the special duty exception did not apply under these circumstances because the police had exercised no direct and immediate control over the children. The police had not initiated the circumstances that placed Betty and John in danger because they did not bring the intruder to the apartment or order the children to remain there with the intruder. *Doe*, 161 Ill. 2d at 387.

Similarly, in *Marvin v. Chicago Transit Authority*, 113 Ill. App. 3d 172, 446 N.E.2d 1183 (1983), the court held that the city did not owe the plaintiff a special duty because its police officer had not exercised direct and immediate control over the plaintiff. Several youths had threatened the plaintiff as he paid his fare at a CTA station patrolled by a Chicago police officer. The officer, who had witnessed the threats, refused the plaintiff's request to accompany him onto the train platform, and the youths subsequently beat the plaintiff on the platform. *Marvin*, 113 Ill. App. 3d at 174-77; see also *Burdinie*, 139 Ill. 2d at 526-27 (swimming instructor did not exercise direct and immediate control when he directed the plaintiff to jump into the pool; the plaintiff voluntarily joined the class and initiated the contact with the municipality by enrolling in the class).

■ The allegations of plaintiff's complaint in this case do not show that the CTA exercised direct and immediate control over her at the time she was injured. Her allegations do not show such control because they describe a situation in which she asked a public employee for protection that was not normally provided. There is no allegation that a public employee created a position of peril for her. See *Leone*, 156 Ill. 2d at 39, citing *Burdinie*, 139 Ill. 2d at 525. As in *Doe*, the CTA did not create the circumstances that led to her assault. It did not place Sisto on the train or direct plaintiff to ride the train. Rather, as in *Burdinie*, plaintiff initiated the contact with the CTA by choosing to ride the Blue Line and by requesting additional security. Like the municipalities in *Doe* and *Marvin*, the CTA did not have direct and immediate control over plaintiff when it failed to provide the protection plaintiff requested. See also *White v. Village of Homewood*, 285 Ill. App. 3d 496, 504 (1996) (finding no direct and immediate control where no governmental official in a position of authority ordered the plaintiff to take specific actions and where defendants did not have information about the situation that the plaintiff did not share). Given the absence of allegations establishing that the CTA exercised direct and immediate control over plaintiff, the complaint fails to show the existence of a special duty, and we affirm its dismissal.

Because of our conclusion that plaintiff failed to sufficiently allege a special duty, it is unnecessary for us to address whether there is a special duty exception to the Metropolitan Transit Act and whether such an exception is constitutional. See *Eagan v. Chicago Transit Authority*, 158 Ill. 2d 527, 634 N.E.2d 1093 (1994) (refusing to address the constitutionality of a special duty exception to the Metropolitan Transit Act after holding that there was no special duty in the circumstances before it).

Judgment affirmed.

McNULTY and TULLY, JJ., concur.